# EXHIBIT B

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 9:56AM
Linda Myhre Enlow
Thurston County Clerk

**CIVIL**

_____**Thurston**_____ COUNTY SUPERIOR COURT

Case Information Cover Sheet (CICS)

**Case Number**___24-2-02712-34___  **Case Title** __State of Wash. & Dep't of Health v. GEO Group, Inc.__

**Attorney Name** __Marsha Chien_____  **Bar Membership Number** __47020____

**Alternate Email Address:** __Marsha.Chien@atg.wa.gov; SGOOlyEF@atg.wa.gov_____
**(New Case Number will be Sent to this Email Address)**

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources. Cause of action definitions are listed on the back of this form. Thank you for your cooperation.

| | | | | | |
|---|---|---|---|---|---|
| ☐ | ABJ | Abstract of Judgment | ☐ | PRG | Property Damage – Gangs |
| ☐ | ALR | Administrative Law Review | ☐ | PRP | Property Damages |
| ☐ | ALRJT | Administrative Law Review-Jury Trial  (L&I) | ☐ | QTI | Quiet Title |
| ☐ | CRP | Petition for Certificate of Restoration of Opportunity | ☐ | RDR | Relief from Duty to Register |
| ☐ | CHN | Non-Confidential Change of Name | ☐ | RFR | Restoration of Firearm Rights |
| ☐ | COL | Collection | ☐ | SDR | School District-Required Action Plan |
| ☐ | CON | Condemnation | ☐ | SPC | Seizure of Property-Commission of Crime |
| ☐ | COM | Commercial | ☐ | SPR | Seizure of Property-Resulting from Crime |
| ☐ | DOL | Appeal Licensing Revocation | ☐ | STK | Stalking Petition |
| ☐ | DVP | Domestic Violence | ☐ | SXP | Sexual Assault Protection |
| ☐ | EOM | Emancipation of Minor | ☐ | TAX | Employment Security Tax Warrant |
| ☐ | FJU | Foreign Judgment | ☐ | TAX | L & I Tax Warrant |
| ☐ | FOR | Foreclosure | ☐ | TAX | Licensing Tax Warrant |
| ☐ | FPO | Foreign Protection Order | ☐ | TAX | Revenue Tax Warrant |
| ☐ | HAR | Unlawful Harassment | ☐ | TMV | Tort – Motor Vehicle |
| ☒ | INJ | Injunction | ☐ | TRJ | Transcript of Judgment |
| ☐ | INT | Interpleader | ☐ | TTO | Tort – Other |
| ☐ | LCA | Lower Court Appeal – Civil | ☐ | TXF | Tax Foreclosure |
| ☐ | LCI | Lower Court Appeal – Infractions | ☐ | UND | Unlawful Detainer – Commercial |
| ☐ | LUPA | Land Use Petition Act | ☐ | UND | Unlawful Detainer – Residential |
| ☐ | MAL | Other Malpractice | ☐ | VAP | Vulnerable Adult Protection Order |
| ☐ | MED | Medical Malpractice | ☐ | VVT | Victims of Motor Vehicle Theft-Civil Action |
| ☐ | MHA | Malicious Harassment | ☐ | WDE | Wrongful Death |
| ☐ | MSC2 | Miscellaneous – Civil | ☐ | WHC | Writ of Habeas Corpus |
| ☐ | MST2 | Minor Settlement – Civil  (No Guardianship) | ☐ | WMW | Miscellaneous Writs |
| ☐ | PCC | Petition for Civil Commitment (Sexual Predator) | ☐ | WRM | Writ of Mandamus |
| ☐ | PFA | Property Fairness Act | ☐ | WRR | Writ of Restitution |
| ☐ | PIN | Personal Injury | ☐ | WRV | Writ of Review |
| ☐ | PRA | Public Records Act | ☐ | XRP | Extreme Risk Protection Order |

**IF YOU CANNOT DETERMINE THE APPROPRIATE CATEGORY, PLEASE DESCRIBE THE CAUSE OF ACTION BELOW.**

_____

*Please Note:  Public information in court files and pleadings may be posted on a public Web site.*

## APPEAL/REVIEW

**Administrative Law Review**-Petition to the superior court for review of rulings made by state administrative agencies.

**Appeal of a Department of Licensing Revocation**-Appeal of a DOL revocation (RCW 46.20.308(9)).

**Lower Court Appeal-Civil**-An appeal for a civil case; excludes traffic infraction and criminal matters.

**Lower Court Appeal-Infractions**-An appeal for a traffic infraction matter.

## CONTRACT/COMMERCIAL

**Breach of Contract**-Complaint involving monetary dispute where a breach of contract is involved.

**Commercial Contract**-Complaint involving monetary dispute where a contract is involved.

**Commercial Non-Contract**-Complaint involving monetary dispute where no contract is involved.

**Third Party Collection**-Complaint involving a third party over a monetary dispute where no contract is involved.

## PROTECTION ORDER

**Civil Harassment**-Petition for protection from civil harassment.

**Domestic Violence** -Petition for protection from domestic violence.

**Extreme Risk Protection Order**-Petition to restrict ownership, possession, custody or control of a firearm or concealed weapons permit.

**Foreign Protection Orders**-Any protection order of a court of the United States, or of any state, territory, or tribal land, which is entitled to full faith and credit in this state.

**Sexual Assault Protection**-Petition under RCW 7.90.020.

**Stalking**- Petition for protection from stalking for victims who do not qualify for a domestic violence protection order. (RCW 7.92.030)

**Vulnerable Adult Protection**-Petition for protection order for vulnerable adults, as those persons are defined in RCW 74.34.020.

## JUDGMENT

**Abstract Only**-A certified copy of a judgment docket from another superior court, an appellate court, or a federal district court.

**Foreign Judgment**-Any judgment, decree, or order of a court of the United States, or of any state or territory, which is entitled to full faith and credit in this state.

**Judgment, Another County**-A certified copy of a judgment docket from another superior court within the state.

**Judgment, Another State**-Any judgment, decree, or order from another state which is entitled to full faith and credit in this state.

**Tax Warrants** -A notice of assessment by a state agency creating a judgment/lien in the county in which it is filed. (Four types available.)

**Transcript of Judgment**-A certified copy of a judgment from a court of limited jurisdiction to a superior court in the same county.

## OTHER COMPLAINT/PETITION

**Petition for Certificate of Restoration of Opportunity**-Created under Second Engrossed Substitute House Bill 1553

**Change of Name**-Petition for a change of name.  If change is confidential due to domestic violence/anti-harassment see case type 5 instead.

**Deposit of Surplus Funds**-Deposit of money or other item with the court.

**Emancipation of Minor**-Petition by a minor for a declaration of emancipation.

**Injunction**-Complaint/petition to require a person to do or refrain from doing a particular thing.

**Interpleader**-Petition for the deposit of disputed earnest money from real estate, insurance proceeds, and/or other transaction(s).

**Malicious Harassment**-Suit involving damages resulting from malicious harassment.

**Minor Settlements**-Petition for a court decision that an award to a minor is appropriate when no letters of guardianship are required (e.g., net settlement value $25,000 or less).

**Petition for Civil Commitment (Sexual Predator)-**Petition for the involuntary civil commitment of a person who 1) has been convicted of a sexually violent offense whose term of confinement is about to expire or has expired, 2) has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial who is about to be released or has been released, or 3) has been found not guilty by reason of insanity of a sexually violent offense and who is about to be released or has been released, and it appears that the person may be a sexually violent predator.

**Property Damage-Gangs**-Complaint involving damage to property

related to gang activity.

**Public Records Act-**Actions filed under RCW 42.56.

**Relief from Duty to Register**-Civil action requesting relief from duty to register as a sex offender. Petition can address the registration obligation that arises from multiple cases. RCW 9A.44.142, 9A.44.143.

**Restoration of Firearms Rights-**Petition seeking restoration of firearms rights under RCW 9.41.040 and 9.41.047. *(Eff. 9-2-2014)*

**School District-Required Action Plan**-Petition filed requesting court selection of a required action plan proposal relating to school academic performance.

**Seizure of Property from the Commission of a Crime**-Seizure of personal property which was employed in aiding, abetting, or commission of a crime, from a defendant after conviction.

**Seizure of Property Resulting from a Crime**-Seizure of tangible or intangible property which is the direct or indirect result of a crime, from a defendant following criminal conviction (e.g., remuneration for, or contract interest in, a depiction or account of a crime).

**Subpoenas**-Petition for a subpoena.

## PROPERTY RIGHTS

**Condemnation**-Complaint involving governmental taking of private property with payment, but not necessarily with consent.

**Foreclosure**-Complaint involving termination of ownership rights when a mortgage or tax foreclosure is involved, where ownership is not in question.

**Land Use Petition**-Petition for an expedited judicial review of a land use decision made by a local jurisdiction (RCW 36.70C.040).

**Property Fairness**-Complaint involving the regulation of private property or restraint of land use by a government entity brought forth by Title 64 RCW.

**Quiet Title**-Complaint involving the ownership, use, or disposition of land or real estate other than foreclosure.

**Unlawful Detainer**-Complaint involving the unjustifiable retention of lands or attachments to land, including water and mineral rights.

## TORT, MEDICAL MALPRACTICE

**Hospital**-Complaint involving injury or death resulting from a hospital.

**Medical Doctor**-Complaint involving injury or death resulting from a medical doctor.

**Other Health Care Professional-**Complaint involving injury or death resulting from a health care professional other than a medical doctor.

## TORT, MOTOR VEHICLE

**Death**-Complaint involving death resulting from an incident involving a motor vehicle.

**Non-Death Injuries** -Complaint involving non-death injuries resulting from an incident involving a motor vehicle.

**Property Damage Only**-Complaint involving only property damages resulting from an incident involving a motor vehicle.

## TORT, NON-MOTOR VEHICLE

**Asbestos**-Complaint alleging injury resulting from asbestos exposure.

**Other Malpractice**-Complaint involving injury resulting from other than professional medical treatment.

**Personal Injury**-Complaint involving physical injury not resulting from professional medical treatment, and where a motor vehicle is not involved.

**Products Liability**-Complaint involving injury resulting from a commercial product.

**Property Damages**-Complaint involving damage to real or personal property excluding motor vehicles.

**Victims of Motor Vehicle Theft**-Complaint filed by a victim of car theft to recover damages. (RCW 9A.56.078)

**Wrongful Death**-Complaint involving death resulting from other than professional medical treatment.

## WRIT

**Writ of Habeas Corpus**-Petition for a writ to bring a party before the court.

**Writ of Mandamus**-Petition for writ commanding performance of a particular act or duty.

**Writ of Restitution**-Petition for a writ restoring property or proceeds; not an unlawful detainer petition.

**Writ of Review**-Petition for review of the record or decision of a case pending in the lower court; does not include lower court appeals or administrative law reviews.

**Miscellaneous Writs**

Updated: 2/03/2017

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 9:56AM
Linda Myhre Enlow
Thurston County Clerk

1  Hearing date:
2  Hearing time:
   Judge/Calendar:

3

4

5

6

7
                    **STATE OF WASHINGTON**
8              **THURSTON COUNTY SUPERIOR COURT**

9  STATE OF WASHINGTON,              NO.   24-2-02712-34
   DEPARTMENT OF HEALTH,
10                                   SUMMONS
                        Plaintiff,
11
        v.
12
   THE GEO GROUP, INC.,
13
                        Defendant.
14

15  **TO:    DEFENDANT, THE GEO GROUP, INC.**

16        A lawsuit has been started against you in the above-entitled court by the above-named

17  Plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you

18  with this Summons.

19        In order to defend against this lawsuit, you must respond to the complaint by stating your

20  defense in writing, and serve a copy upon the undersigned attorneys for the Plaintiff within

21  twenty (20) days after the service of this Summons, excluding the day of service, or a default

22  judgment may be entered against you without notice. If you serve a notice of appearance on the

23  undersigned attorneys, you are entitled to notice before a default judgment may be entered.

24        You may demand that the Plaintiff file this lawsuit with the court. If you do so, the

25  demand must be in writing and must be served upon the Plaintiff. Within fourteen (14) days after

26

SUMMONS                              1                ATTORNEY GENERAL OF WASHINGTON
                                                          1125 Washington Street SE
                                                                PO Box 40100
                                                           Olympia, WA 98504-0100
                                                               (360) 753-6200

1    you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on you of this

2    summons and complaint will be void.

3          If you wish to seek the advice of an attorney in this matter you should do so promptly so that

4    your written response, if any, may be served on time. **THIS SUMMONS** is issued pursuant to

5    Rule 4 of the Superior Court Civil Rules of the State of Washington.

6          DATED this 30th day of July 2024 in Seattle, Washington.

7          ROBERT W. FERGUSON
           Attorney General
8

9          */s/ Marsha Chien*
           MARSHA CHIEN, WSBA 47020
10         CRISTINA SEPE, WSBA 53609
           Deputy Solicitors General
11         1125 Washington Street SE
           PO Box 40100
12         Olympia, WA 98504-0100
           (360) 753-6200
13         Marsha.Chien@atg.wa.gov
           Cristina.Sepe@atg.wa.gov
14

15         ELLEN RANGE, WSBA 51334
           ANDREW HUGHES, WSBA 49515
16         Assistant Attorneys General
           Complex Litigation Division
17         800 Fifth Avenue, Suite 2000
           Seattle, WA 98104
18         (206) 464-7744
           Ellen.Range@atg.wa.gov
19         Andrew.Hughes@atg.wa.gov
20

21         LILIA LOPEZ, WSBA 22273
           Senior Counsel
22         Agriculture and Health Division
           1125 Washington Street SE
23         Olympia, WA 98504-0100
           (360) 586-6500
24         Lilia.Lopez@atg.wa.gov

25
           *Counsel for Department of Health*
26

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 9:56AM
Linda Myhre Enlow
Thurston County Clerk

1  | Hearing date:
2  | Hearing time:
   | Judge/Calendar:

3

4

5

6

7

8    **STATE OF WASHINGTON**
     **THURSTON COUNTY SUPERIOR COURT**

9   STATE OF WASHINGTON,                    NO. **24-2-02712-34**
    DEPARTMENT OF HEALTH,

10                                          COMPLAINT FOR INJUNCTIVE
                        Plaintiff,          RELIEF

11

12          v.

13  THE GEO GROUP, INC.,

14                      Defendant.

15          Plaintiff, State of Washington, Department of Health, Environmental Public Health

16  Program, alleges as follows:

17                  **I.    DESCRIPTION OF ACTION**

18          1.1     The Department of Health (Department), Environmental Public Health Program,

19  brings this action under RCW Title 7 and RCW 43.70.190. The Department seeks an order

20  restraining The GEO Group, Inc. (GEO). GEO has refused entry to Department staff who are

21  authorized to investigate threats to public health under RCW 43.70.170. The Department seeks

22  to restrain further refusal of entry.

23                  **II.    JURISDICTION**

24          2.1     This Court has jurisdiction over the subject matter and over the parties.

25  RCW 43.70.190 directs the Department to bring an action to enjoin a violation or threatened

26  violation of any of the provisions of the public health laws, rules, or regulations in the superior

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    court in the county in which such violation occurs or is about to occur or in the superior court of

2    Thurston County. GEO owns and operates the detention facility on the Tacoma tideflats in Pierce

3    County.  Based upon 722 complaints the Department has received to-date, the Department has

4    concerns about threats to public health at the facility.

5        2.2    The Department has the authority to investigate public health threats and to enter

6    buildings to do so under RCW 43.70.170.

7                              **III.    PARTIES**

8        3.1    Plaintiff Department of Health is an agency of the State of Washington.

9        3.2    Defendant is The GEO Group, Inc. GEO contracts with the U.S. Immigration and

10    Customs Enforcement (ICE) to provide detention management services at its Tacoma facility.

11    GEO has named its facility the "Northwest ICE Processing Center" (NWIPC).

12                         **IV.    FACTUAL ALLEGATIONS**

13        4.1    The Department has received more than 700 hundred complaints from detainees

14    at the NWIPC alleging poor conditions, unsanitary bathrooms, dirty water, poor air quality,

15    COVID outbreaks, animal-grade food quality, and a spate of suicides. Muniz Decl. ¶¶ 5-11.

16        4.2    Soleil Muniz is a Complaint Enforcement Lead and also works in the

17    Environmental Public Health Program. Ms. Muniz's primary work is to investigate health and

18    safety complaints, including those made by detainees.

19        4.3    On July 18, 2024, Ms. Muniz attempted to investigate the public health

20    complaints from the NWIPC. After identifying herself to GEO's front desk personnel, Bruce

21    Scott, GEO's facility administrator, arrived and met her in the lobby area.

22        4.4.    At Mr. Scott's request, Ms. Muniz filled out a form indicating that she sought to

23    inspect the facility under RCW 43.70.170. Ms. Muniz wrote that she was investigating public

24    health concerns related to "water quality, air quality COVID/disease infection, suicide/mental

25    health, and living conditions/hygiene."

26

COMPLAINT FOR INJUNCTIVE RELIEF            2            ATTORNEY GENERAL OF WASHINGTON
                                                          1125 Washington Street SE
                                                          PO Box 40100
                                                          Olympia, WA 98504-0100
                                                          (360) 753-6200

4.4.    Instead of allowing the Department inspector's entry, Mr. Scott said he would confer with ICE. Mr. Scott later returned with Jeffrey White and Michael Knight. Together, they denied Ms. Muniz access to the NWIPC. GEO allowed the Department to take water samples on the "non-secure" side of the facility, i.e., the lobby area, but otherwise denied Ms. Muniz entry to the facility. Muniz Decl. ¶¶ 13-16.

4.5    To date, the Department has been unable to enter the NWIPC to investigate complaints it has received from detainees.

4.6    The Department believes, based upon the complaints, that the health and safety of detainees is at risk.

4.7    The Department believes GEO, by refusing entry, is preventing the Department from carrying out its statutory obligation to investigate public health threats.

## V.    CAUSES OF ACTION

5.1    RCW 43.70.190 permits the Department to bring an action to enjoin a violation or threatened violation of the public health laws.

5.2    The Department has statutory authority under RCW 43.70.170 to investigate violations or threatened violations of public health laws and to have free and unimpeded access to all buildings to do so.

5.3    GEO has refused the Department from entering the NWIPC to conduct its investigation.

5.4    The Department is unable to investigate complaints from detainees at NWIPC under RCW 43.70.170 because of GEO's refusal to permit entry.

5.5    GEO is in violation of RCW 43.70.170 by refusing to permit entry for the purposes of investigating complaints.

5.6    GEO is in violation of RCW 43.70.170 by refusing to permit entry for the purpose of unannounced inspection.

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1        5.7      Because of the actions of GEO, the Department is unable to carry out its statutory

2  obligations under RCW 43.70.170.

3                          **VI.     PRAYER FOR RELIEF**

4        6.1      The Department asks this Court to grant relief by enjoining The GEO Group,

5  Inc., from refusing entry for the purposes of inspections and investigations.

6        6.2      The Department further requests that this Court retain jurisdiction to enforce the

7  terms of its order.

8        DATED this 30th day of July 2024.

9                          ROBERT W. FERGUSON
10                       Attorney General

                          */s/ Marsha Chien*
11                       MARSHA CHIEN, WSBA 47020
                        CRISTINA SEPE, WSBA 53609
12                       Deputy Solicitors General
                        1125 Washington Street SE
13                       PO Box 40100
                        Olympia, WA 98504-0100
14                       (360) 753-6200
                        Marsha.Chien@atg.wa.gov
15                       Cristina.Sepe@atg.wa.gov

16                       ELLEN RANGE, WSBA 51334
                        ANDREW HUGHES, WSBA 49515
17                       Assistant Attorneys General
                        Complex Litigation Division
18                       800 Fifth Avenue, Suite 2000
                        Seattle, WA 98104
19                       (206) 464-7744
                        Ellen.Range@atg.wa.gov
20                       Andrew.Hughes@atg.wa.gov

21                       LILIA LOPEZ, WSBA 22273
                        Senior Counsel
22                       Agriculture and Health Division
                        1125 Washington Street SE
23                       Olympia, WA 98504-0100
                        (360) 586-6500
24                       Lilia.Lopez@atg.wa.gov

25                       *Counsel for Department of Health*

26

E FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 10:20:29 AM
Linda Myhre Enlow
Thurston County Clerk

| SUPERIOR COURT OF WASHINGTON<br>IN AND FOR THURSTON COUNTY |
| --- |

| | |
| --- | --- |
| STATE DEPARTMENT OF HEALTH<br><br>VS<br><br>THE GEO GROUP INC | No. 24-2-02712-34<br>**NOTICE OF ASSIGNMENT AND NOTICE OF<br>TRIAL SETTING DATE** |

TO:     THURSTON COUNTY CLERK
        ATTORNEYS/LITIGANTS

PLEASE TAKE NOTICE:

1.   That the above-noted case number is assigned to: **The Honorable Mary Sue Wilson**

2.   That the trial setting date for this case is: **December 06, 2024**

| **Do not come to court on the trial scheduling date.** Do not call or e-mail the court. Instead, file a scheduling questionnaire and serve it on the other parties. The questionnaire is attached to this notice. Review Local Court Rule 40 for more information about scheduling. |
| --- |

3.   **Plaintiff**: You must serve both this notice and a blank scheduling questionnaire 14 days prior to the trial setting date.  If there is no proof of service, the court will not issue a case scheduling order.  You must file a completed scheduling questionnaire 5 court days prior to the trial setting date.

4.   **All Other Parties**: You must file and serve a completed scheduling questionnaire 2 court days prior to the trial setting date.  Joint submissions by both parties are also accepted on this date.

5.   Failure to timely submit a scheduling questionnaire shall not be grounds to delay issuing a case schedule order, and it shall not be grounds to continue the trial unless good cause is demonstrated.

6.   The court will not issue a case schedule order unless the case is ready to be scheduled.  "Readiness" for scheduling is explained in Local Court Rule 40, which is available on the court's web site and in law libraries.

7.   Parties can obtain an earlier trial scheduling date by filing and serving a notice of issue form.

Dated on this the 30th day of July, 2024.

Hearing date: _____

Hearing time: _____

Judge/Calendar: _____

| SUPERIOR COURT OF WASHINGTON<br>IN AND FOR THURSTON COUNTY |
|---|

| | |
|---|---|
| STATE DEPARTMENT OF HEALTH<br><br>VS<br><br>THE GEO GROUP INC | No. 24-2-02712-34<br>**SCHEDULING QUESTIONNAIRE SUBMITTED BY:**<br>☐ Plaintiff/Petitioner/Appellant<br>　　(file 5 court days before trial setting)<br>☐ Defendant/Respondent<br>　　(file 2 court days before trial setting)<br>☐ Joint Submission or ☐ Other Party: _____<br>　　(file 2 court days before trial setting) |

**See Local Court Rule 40 to learn how the court schedules cases.**

1.　Will this be a [  ] bench trial, [  ] jury trial, or [  ] appeal from lower court or agency?

　　**Note:** Jury demands must be filed separately and are due by the trial setting date under CR 38(b).

2.　Have all of the defendants or respondents been served:  [  ] Yes　[  ] No

3.　If this is an appeal, has the appellate record (including any transcript) been delivered to the court clerk, or is there a separate certification that the record at this court is complete? [  ] Yes  [  ] No

4.　If this is an appeal from an agency, do you wish to directly transfer it to the Court of Appeals under RCW 34.05.518? [  ] Yes  [  ] No (explain): _____

5.　Is this case subject to civil arbitration? [  ] Yes  [  ] No

6.　How long do you estimate the trial or final hearing will take? _____ hours or _____ days.

7.　When do you anticipate this case will be ready for trial? Month: _____  Year: _____

8.　When are you **unavailable** for trial in the next 24 months? (attach unavailable dates).

9.　Should this case be scheduled as a priority or does this case require special management by the judge? [  ] No  [  ] Yes (explain):

**Date:** _____

| | |
|---|---|
| SIGNED/Bar No.: _____ | SIGNED/Bar No: _____ |
| Name:_____ | Name: _____ |
| Address:_____ | Address:_____ |
| Telephone No:_____ | Telephone No. _____ |
| E-mail address:_____ | E-mail address:_____ |

## Superior Court of Washington, Thurston County

Plaintiff / Petitioner:

   State of Washington Department of Health

Defendant / Respondent:

   The GEO Group, Inc.

Case No. 24-2-02712-34

**Notice of Hearing for Civil Motions**

***Effective: 01/01/2024***
(NTHG)

**To the Court Clerk and all parties:**

**1.** A court hearing has been scheduled for:  August 9, 2024 (date).

The hearing will be before the assigned Judge or Commissioner.  The hearing will take place at 2000 Lakeridge Drive SW, Building 2; Olympia, WA  98502.

**2.** The **name** of the motion or type of hearing is:  Motion for Preliminary Injunction

**Required:** The motion was filed ☒ with this notice or ☐ previously on:  July 30, 2024  (date).

**3.** The hearing should be scheduled as a:
☐ **Unlawful Detainer Ex Parte** (Wednesday 9:00 Administrative Session – DO NOT GO TO COURT)

☐ **Unlawful Detainer Motion** (Friday 9:30 a.m.)

☐ **Trial Setting under LCR 40** (Friday 9:00 Administrative Session – DO NOT GO TO COURT)

☐ **Dispositive Motion** -- Summary Judgment, CR 12(b)(6), or CR 12(c) motion (Friday 9:00 a.m.)

☒ **Other Civil Motion** (Friday 9:00 a.m.)

### *Warnings!*

- If you do not go to the hearing, the court may sign orders without hearing your side.

- You will need to check that the session is available before you schedule a hearing. You can see whether a session is full on the Clerk's website: www.co.thurston.wa.us/clerk.

- If this notice is incomplete or contains an incorrect date, time, or conflicting information, your hearing may not be scheduled, and you will **not** be notified. You can verify whether a hearing was scheduled at: https://odysseyportal.courts.wa.gov/odyportal.

- You need to schedule this hearing at least six business days ahead of time.  More time is required for dispositive motions (28 days) and some other matters.  Consult local and state court rules.

## 4. Declaration of Service

I declare that on <u>August 9</u>, 20<u>24</u>, I ☐ deposited in the United States mail, ☐ delivered through a legal messenger service, ☑ electronically delivered per agreement between the parties, a copy of this notice of hearing, the motion, and all paperwork filed along with the motion, to all people listed below in section 6.

**I declare under penalty of perjury under the laws of Washington State that the foregoing is true and correct.**

Signed at <u>Olympia</u> (city) <u>WA</u> (State) on <u>July 30, 2024</u> (date signed).

<u>Leena Vanderwood</u> (printed name)

<u>s/ Leena Vanderwood</u> (signature)

## 5. Person Scheduling this Hearing:

Name of party: <u>Marsha Chien</u>

Sign: <u>s/ Marsha Chien</u>

Print Name: <u>Marsha Chien</u>

WSBA # <u>47020</u> (if attorney)

Address: <u>PO Box 40100</u>

City/State/Zip: <u>Olympia, WA  98503</u>

Telephone: <u>360-753-6200</u>

Email: <u>Marsha.Chien@atg.wa.gov</u>

Date: <u>July 30, 2024</u>

## 6. Names and Contact Information for Everyone Notified of this Hearing

**Name:** <u>Harry Korrell</u>

Attorney for: <u>Defendant The GEO Group, Inc.</u>

WSBA #: _____

Address: <u>HarryKorrell@dwt.com</u>

_____

Telephone: <u>206-757-8080</u>

**Name:** _____

Attorney for: _____

WSBA #: _____

Address: _____

_____

Telephone: _____

**Name:** _____

Attorney for: _____

WSBA #: _____

Address: _____

_____

Telephone: _____

**Name:** _____

Attorney for: _____

WSBA #: _____

Address: _____

_____

Telephone: _____

**Name:** _____

Attorney for: _____

WSBA #: _____

Address: _____

_____

Telephone: _____

1

2

3

> Hearing date:  August 9, 2024
> Hearing time:  9:00 am
> Judge/Calendar:
> Hon. Wilson / Civil

4

5

6

7

**STATE OF WASHINGTON**
**THURSTON COUNTY SUPERIOR COURT**

8

9

STATE OF WASHINGTON,
DEPARTMENT OF HEALTH,

NO.  24-2-02712-34

10

Plaintiff,

MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF

11

v.

12

THE GEO GROUP, INC.,

13

Defendant.

14

## I.    INTRODUCTION

15

   In the past year, the Washington State Department of Health (Department), has received

16

over 700 hundred complaints from detainees about conditions at the Northwest Immigration

17

Processing Center (NWIPC), a private detention facility owned and operated by The GEO

18

Group, Inc. (GEO). These complaints run the gamut from medical neglect to insufficient food to

19

lack of clean laundry. As alleged, these complaints present clear threats to detainee health and

20

safety at NWIPC. The Department thus sought to inspect GEO's facility under RCW 43.70.170,

21

which authorizes it to investigate public health threats in Washington. But GEO blocked the

22

Department. Despite having allowed the Washington State Department of Labor & Industries

23

MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  (L&I) to perform an inspection a week prior, GEO denied the Department's inspection to

2  proceed further than the entry area's bathroom.

3      GEO's denial of the Department's entry is unlawful. The Department has broad authority

4  to investigate any article or condition constituting a threat to the public health including, but not

5  limited to: outbreaks of communicable diseases, food poisoning, contaminated water supplies,

6  and all other matters injurious to the public health. RCW 43.70.170. Our Legislature has

7  specifically mandated the Department to "preserv[e] [the] public health" by "strictly enforce[ing]

8  all laws for the protection of the public health and the improvement of sanitary conditions in the

9  state." RCW 43.70.005; *see also* RCW 43.70.130(3). Here, detainee complaints unquestionably

10 raised concerns that certain conditions inside NWIPC constitute a threat to the health of

11 detainees, who are members of the public the Department is legally (and morally) bound to

12 protect. GEO's flagrant denial of the Department's "free and unimpeded access" to NWIPC thus

13 plainly violates State law and puts detainees at immediate and serious risk. RCW 43.70.170.

14     Therefore, pursuant to RCW 43.70.190, the Department moves this Court to enter an

15 order, enjoining GEO from refusing the Department entry so the Department may investigate

16 threats to the public health under RCW 43.70.170.

17             **II.      EVIDENCE RELIED ON**

18     In support of the Department's motion, the following declarations are included:

19     1.      Marsha Chien, Deputy Solicitor General;

20     2.      Eric Arroyo, Compliance Safety and Health Investigator, Washington State

21 Department of Labor & Industries;

22     3.      Soleil Muniz, Complaint Enforcement Lead, Washington State Department of

23 Health; and

MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF                               2                ATTORNEY GENERAL OF WASHINGTON
                                                                          1125 Washington Street SE
                                                                               PO Box 40100
                                                                          Olympia, WA 98504-0100
                                                                              (360) 753-6200

1        4.        Joe Barbee, Public Health Analyst 3, Washington State Department of Health,

2    Environmental Public Health Division, Office of Drinking Water.

3                        **III.        STATEMENT OF FACTS**

4    **A.        The Department's Attempts to Exercise its Public Health Authority**

5        Since April 2023, the Department of Health has received over *700* complaints from

6    detainees inside NWIPC. Muniz Decl. ¶ 5. Among other things, these complaints paint a stark

7    portrait of GEO's lack of attention to medical needs, contaminated food, insufficient food, dirty

8    clothes and bedding, brown water, and hunger strikes. *Id.*

9        Detainees have complained about a lack of medical care. *Id.* ¶ 6. Medical concerns

10    reported include stroke, paralysis, heart conditions, internal bleeding, and asthma; detainees say

11    GEO has failed to address these health conditions. *Id.* One detainee asked to be taken to the

12    hospital, but was refused; another broke their arm, and it took several days before the arm was

13    placed in a cast. *Id.*

14        Detainees also raise concerns about GEO's potential neglect of detainees' mental health

15    conditions. *Id.* ¶ 7. A detainee with mental health issues soiled their clothing but was refused

16    clean clothing by one of the guards. *Id.* In the past six months, there have been reports of a rash

17    of suicide attempts, showing that mental health concerns at the facility are going unaddressed.

18    *Id.*

19        Detainees have complained that the food provided by GEO contains foreign objects

20    including burned plastic, metal string, rope, and splinters. *Id.* ¶ 8. The food is of low-quality and

21    is typically soy-based meat substitutes. *Id.* A detainee on a medically-prescribed diet to include

22    fruits and vegetables was refused such a diet. *Id.* Detainees report the food tastes and smells

23    spoiled, makes their stomach hurt, and they do not receive enough to eat. *Id.*

1    Detainees have complained they are unable to care for basic personal hygiene needs.

2    *Id*. ¶ 9. Clothing, sheets, and blankets are rarely changed or laundered and when returned, they

3    are not clean. *Id*. Clothing is not replaced when worn out; detainees have only one change of

4    clothes, and often that change of clothes has been previously worn by other detainees and not

5    washed in between. *Id*.

6    Detainees have complained the facility is unsanitary; bathrooms are rarely cleaned, the

7    toilets are often blocked, floors go unswept, mold is visible, and the facility smells like a dirty

8    bathroom. *Id*. ¶ 10.

9    Lastly, detainees report that the water is brown and possibly contaminated. *Id*. ¶ 11. As

10   this water is detainees' only source for drinking, bathing, laundry and food preparation, the

11   Department takes the prospect of water contamination very seriously. *Id*.

12   Obviously, these many, many allegations of health and safety violations from the people

13   detained in NWIPC have caused the Department to become concerned that conditions in NWIPC

14   pose an imminent threat to the health of detainees and employees. *Id*. ¶ 12. These conditions

15   compelled the Department to investigate the facility under RCW 43.70.170. *Id*.

16   On July 18, 2024, the Department attempted to conduct an inspection under

17   RCW 43.70.170. *Id*. ¶ 13; Muniz Decl., Ex. A. In requesting access, the Department informed

18   GEO it specifically needed to inspect the facility's water quality, air quality, COVID and disease

19   infection protocols, mental health care, and living conditions and hygiene. Muniz Decl., Ex. A.

20   GEO permitted the Department to perform a limited inspection of the water quality by

21   testing the water in the bathroom next to the lobby; however, it denied the Department further

22   entry. Barbee Decl. ¶ 9. This limited access does not allow adequate testing of the water quality

23   at the facility. *Id*. ¶¶ 12–16. And of course, GEO's refusal of entry beyond the lobby bathroom

MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF                          4                  ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    blocked the Department from investigating the many other public health complaints it received

2    from detainees. Barbee Decl. ¶¶ 9, 16; Muniz Decl. ¶ 16. According to the public health experts

3    at the Department, the conditions at NWIPC pose active public health threats. Barbee Decl. ¶ 7;

4    Muniz Decl. ¶ 17.

5    **B.    Legal Background**

6            This case is part of a cluster of disputes stemming from GEO's near-total effort to block

7    State oversight of its facility. After GEO initially blocked inspectors from both the Department

8    of Labor and Industries and the Department of Health, both departments separately sued to gain

9    access to GEO's facility so they could do their job of protecting the public. In response, a federal

10   district court determined that Labor and Industries had authority to inspect the NWIPC under its

11   general authority, but not under a specific law authorizing inspections of private detention

12   facilities. *See Department of Labor and Industries v. GEO Secure Services, LLC*, No. C24-5095

13   BHS, Doc. No. 50 (W.D. Wash. July 1, 2024), Chien Decl., Ex. A; *see also*

14   *Department of Health v. The GEO Group, Inc.*, No. C24-5029 BHS, Doc. No. 49 (W.D. Wash.

15   July 1, 2024), Chien Decl., Ex. B. [1]

16           In the L&I matter, the court granted a preliminary injunction under RCW 49.17.070, a

17   generally applicable safety and health law protecting GEO employees. Chien Decl., Ex. A at 3.

18   *The GEO Group, Inc. v. Inslee*, No. C23-5626 BHS, 2024 WL 1012888, at \*24–26 (W.D. Wash.

19

20           [1] A separate lawsuit—*GEO* v. *Inslee*, Case No. 3:23-cv-05626-BHC (W.D. Wash.)—concerns HB 1470,
     a separate law that supplements state agencies' pre-existing investigation authority to investigate potential health
21   and safety issues by, among other things, specifically directing the Department and Labor and Industries to inspect
     private detention facilities in Washington. The district court concluded that this law impermissibly singled out GEO
     because NWIPC is the only private detention facility in Washington. *The GEO Group, Inc. v. Inslee*, No. C23-5626
22   BHS, 2024 WL 1012888, at \*24–26 (W.D. Wash. Mar. 8, 2024). That ruling is currently on appeal. But because
     this case concerns only the Department's pre-existing authority to investigate public health threats, that ruling has
23   no bearing on this case.

1   Mar. 8, 2024). Shortly thereafter, L&I successfully completed a comprehensive inspection of

2   GEO's facility in Tacoma. Arroyo Decl. ¶ 6.

3          As for the DOH matter, the court *sua sponte* found that the Department never explicitly

4   attempted to inspect under its general authority, RCW 43.70.170, and so the Department lacked

5   Article III standing to seek injunctive relief based on what the court deemed a hypothetical

6   refusal. Chien Decl., Ex. B at 3. The court explained that it would have to "speculate as to

7   whether GEO would have denied DOH access to the NWIPC had the agency cited and explained

8   the suspected conditions that constitute 'a threat to the public health'." *Id*. The court later

9   declined to determine whether the Department had made a sufficient showing under its general

10  authority, asserting: "A state court would be better suited to interpret the language of this

11  statute." Chien Decl., Ex. B at 19.

12         Now, there is no need to speculate. GEO has denied the Department access to the NWIPC

13  when the agency specifically cited its general authority and the public health threats posed.

14  Muniz Decl., Ex. A; RCW 43.70.170. Therefore, the Department files this action with this Court,

15  seeking a preliminary injunction to inspect the NWIPC under its general authority.

16                            **IV.    ARGUMENT**

17         This Court should restrain GEO from denying the Department entry to its facility under

18  the Department's authority to investigate conditions that threaten public health. In general, a

19  party seeking injunctive relief must show that (1) they have a clear legal or equitable right; (2)

20  that there is a well-grounded fear of immediate invasion of that right; and (3) the act, or acts,

21  complained of have either resulted, or will result, in actual and substantial injury. *See Tyler Pipe*

22  *Indus., Inc. v. State Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982). Also, since

23  injunctions are within the equitable powers of the court, these criteria must be examined in light

MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF                          6          ATTORNEY GENERAL OF WASHINGTON
                                                         1125 Washington Street SE
                                                         PO Box 40100
                                                         Olympia, WA 98504-0100
                                                         (360) 753-6200

1    of equity, including the balancing of the relative interests of the parties and the interests of the

2    public, if appropriate. *Rabon v. City of Seattle*, 135 Wn.2d 278, 284, 957 P.2d 621 (1998).

3         A reviewing court may resolve purely legal questions in determining the propriety of a

4    preliminary injunction order. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 154,

5    157 P.3d 831 (2007).

6    **A.    The Department Has a Legal Right to Investigate Public Health Threats**

7         In determining whether injunctive relief is appropriate, the court must determine whether

8    the Legislature has provided the Department with clear legal authority to access GEO's facility

9    so it may investigate public health threats. The Legislature has tasked the Department with

10   "preservation of public health" by "strictly enforc[ing] all laws for the protection of the public

11   health and the improvement of sanitary conditions in the state." RCW 43.70.005;

12   RCW 43.70.130(3). To meet these demands, the Department may investigate any article or

13   condition constituting a threat to the public health including, but not limited to:

14        •    outbreaks of communicable diseases,

15        •    food poisoning,

16        •    contaminated water supplies, and

17        •    all other matters injurious to the public health.

18   RCW 43.70.170. For purposes of such an investigation, the Department "shall at all times have

19   free and unimpeded access to all buildings." *Id*.

20        The complaints received by the Department unquestionably describe conditions that

21   constitute a threat to public health, including conditions specifically enumerated in statute. For

22   example, the water serving as detainees' only source for drinking, bathing, laundry, and food

23

preparation, is described as brown, which means it is possibly contaminated. Muniz Decl. ¶ 11; Barbee Decl. ¶¶ 6–7. Similarly, a "lack of attention to medical needs" coupled with the unsanitary conditions at the facility certainly raises the risk of an "outbreak of communicable diseases" (and at a minimum, implicates the same public health concerns). RCW 43.70.170; Muniz Decl. ¶ 6.

Moreover, the statute does not limit the Department to certain enumerated risks, but broadly authorizes it to inspect "all other matters injurious to the public health." This means what it says: all matters that may harm the public are covered. *See, e.g.*, *Spokane Cnty. Health Dist. v. Brockett*, 120 Wn.2d 140, 149, 839 P.2d 324 (1992) ("[P]ublic health statutes and the actions of local health boards implementing those statutes are liberally construed."); *Snohomish Cnty. Builders Ass'n v. Snohomish Health Dist.*, 8 Wn. App. 589, 595, 508 P.2d 617, 621 (1973) ("It is a recognized basic principle that statutes concerning public health and safety should be liberally construed."). "[T]hreats to public safety come in all shapes and sizes[.]" *Headworks Hand Crafted Ales, Inc. v. Wash. State Liquor & Cannabis Bd.*, 29 Wn. App. 2d 460, 473, 540 P.3d 863 (2024), *review denied sub nom. Headworks Hand Crafted Ales, Inc. v. Wash. State Liquor & Cannabis Bd.*, 29 Wn.2d 460, 547 P.3d 901 (2024). The rash of suicide attempts at NWIPC certainly qualify. Muniz Decl. ¶ 7. So too food that is inadequate, spoiled, or "contaminated [with] foreign objects including burned plastic, metal string, rope, and splinters," may be injurious to detainees' health, and thus falls within the Department's ambit. *Id.* ¶ 8. Any one of these would be an active threat to public health that the Department may (and must) investigate and if true, enjoin. Muniz Decl. ¶ 17; RCW 43.70.190. Taken together, these 700-plus complaints indicate a full-blown public health crisis.

MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF                                     8                 ATTORNEY GENERAL OF WASHINGTON
                                                                        1125 Washington Street SE
                                                                        PO Box 40100
                                                                        Olympia, WA 98504-0100
                                                                        (360) 753-6200

1          To be clear, and lest there be any doubt, detainees are members of the public whose health

2     the Department is charged with protecting under RCW 43.70.170. Muniz Decl. ¶ 12. As already

3     noted, "statutes concerning public health and safety should be liberally construed." *Snohomish*

4     *Cnty. Builders Ass'n*, 8 Wn. App. at 595 (citing *State ex rel. McBride v. Superior Court for King*

5     *Cnty.*, 103 Wash. 409, 427, 174 P. 973, 979 (1918)). Washington public health legislation often

6     broadly cites concerns for "Washington residents." *See, e.g.*, RCW 43.70.495(1). And when

7     reviewing for preemption, the Supreme Court has recognized a state's police powers "to legislate

8     as 'to the protection of the lives, limbs, health, comfort, and quiet of *all persons*.' " *Metro. Life*

9     *Ins. Co. v. Massachusetts*, 471 U.S. 724, 756, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985) (emphasis

10    added). During the COVID public health crisis, courts specifically recognized the threat to

11    immigrant detainees' health as a public health threat. *See, e.g., Zepeda Rivas v. Jennings*,

12    No. 20-CV-02731-LB, 2023 WL 5663153, at *1 (N.D. Cal. Aug. 30, 2023) (releasing detainees

13    because conditions at immigration detention center threatened their health during "public-health

14    crisis"). This Court should construe "public health" broadly to include the health of all

15    Washington residents.

16         The Legislature mandates that the Department preserve public health and grants the tools

17    and access that the Department needs to fulfill its duty. RCW 43.70.005; RCW 43.70.130(3);

18    RCW 43.70.170; and RCW 43.70.190. This Court should affirm the Department's right to enter

19    GEO and perform an inspection limited to the threats of public health identified by the

20    Department.

21

22

23

MOTION FOR PRELIMINARY                        9                  ATTORNEY GENERAL OF WASHINGTON
INJUNCTIVE RELIEF                                                    1125 Washington Street SE
                                                                         PO Box 40100
                                                                    Olympia, WA 98504-0100
                                                                        (360) 753-6200

**B.      The Department Has a Well-Grounded Fear of Invasion of Its Legal Right to Access GEO's Facility So It May Investigate Complaints**

The second prong is easily satisfied as GEO refuses to allow the Department to enter its facility further than a lobby bathroom, despite the Department citing its general authority and identifying potential public threats that need to be investigated. Barbee Decl. ¶ 9; Muniz Decl., Ex. A; Chien Decl., Ex. B at 3. GEO's refusals invade the Department's right (and duty) to access NWIPC and investigate conditions that threaten public health. RCW 43.70.170. Actual invasion of the Department's right clears the hurdle set for the second prong, a fear that its legal right *might* be invaded. *Tyler Pipe Indus., Inc.*, 96 Wn.2d at 792.

**C.      There Have Been and Will Be Actual and Substantial Injury to the Department's Authority and the Public Health If Inspections of a Private Detention Facility Is Not Allowed**

The Department and the public have suffered and will continue to suffer injury from GEO's refusal to allow the Department to fulfill its duty to protect the public. Courts recognize that interference with statutory authority harms the state. *See Maryland v. King*, 567 U.S. 1301, 1303, 133 S. Ct. 1, 183 L. Ed. 2d 667 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) ("The Texas Legislature assigned the prerogatives of prison policy to [the corrections department]. The district court's injunction prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury." (citation omitted)). On this basis, GEO's refusal to allow the Department's entry as the statute requires, causes an ongoing and concrete harm to Washington's public safety interests. *See King*, 567 U.S. at 1303.

MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    GEO's conduct in blocking state inspectors also risks irreparable harm to the wellbeing

2    of GEO's employees and detainees. This safety threat is not abstract. The Department has

3    received hundreds of complaints, falling well within the categories identified by the Legislature

4    as a threat to public health. Muniz Decl., Ex. A; RCW 43.70.170. If true, these Washingtonians

5    are suffering *right now*. And they will continue to suffer injury as long as GEO blocks access to

6    even the most basic state oversight. If the Department finds that conditions within NWIPC

7    indeed threaten public health, the Department expects to work with GEO to address those issues,

8    and ensure that detainees are afforded basic safety and health while in custody. But absent even

9    an inspection, detainees may be forced to endure inhumane conditions without any hope of

10   reprieve.

11   **D.      The Balance of Equities Tips in the State's Favor and an Injunction Is in the Public Interest**

12           Concerns about the health and safety impacts of detainees are central to the inquiry into

13   equity and the public interest. As the Ninth Circuit confirmed, "health and safety" risks to

14   immigrant detainees by conditions at immigration facilities favor an injunction protecting their

15   health. *Roman v. Wolf*, 977 F.3d 935, 944 (9th Cir. 2020); *City & County of San Francisco v.*

16   *U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 762 (9th Cir. 2020). In Washington, as well,

17   when public safety is a risk, the equities tip in favor of preservation. *Nw. Gas Ass'n v.*

18   *Utils. & Transp. Comm'n*, 141 Wn. App. 98, 123 (2007) (danger to public safety outweighed

19   newspapers interests in obtaining pipeline data). Moreover, Washington's Legislature has

20   specifically declared it is "of importance to the people of Washington state to live in a healthy

21   environment and to expect a minimum standard of quality in health care." RCW 43.70.005.

22

23

MOTION FOR PRELIMINARY
INJUNCTION RELIEF                                11                ATTORNEY GENERAL OF WASHINGTON
                                                                    1125 Washington Street SE
                                                                    PO Box 40100
                                                                    Olympia, WA 98504-0100
                                                                    (360) 753-6200

1    GEO may argue the equities tip in its favor, because the Department's inspections pose

2    a security threat to NWIPC. However, GEO's allowance of the Washington State Labor and

3    Industries' inspection negates this argument. *See* Arroyo Decl. ¶¶ 3–6. On July 8, 2024,

4    Washington State's Department of Labor and Industries performed an unannounced and

5    comprehensive inspection of NWIPC. Arroyo Decl. ¶¶ 3, 6. The inspectors were able to inspect

6    the entirety of GEO's worksite with GEO escorts in tow. Arroyo Decl. ¶ 5. This inspection

7    demonstrates GEO is able to maintain security simply by escorting inspectors during an

8    inspection.

9    Additionally, DOH inspections further the public interest by increasing facility

10    transparency and accountability. Washingtonians have "a legitimate and substantial interest in

11    the conduct of certain private institutions." *Nw. Gas Ass'n*, 141 Wn. App. at 122 (cleaned up).

12    And improved public oversight and accountability further the public interest. *See, e.g.*, *Valentine*

13    *v. Collier*, 978 F.3d 154, 166 (5th Cir. 2020) ("the public interest favors having politically

14    accountable officials . . . determine how to allocate resources[ ]" in the prison context); *Conn.*

15    *State Police Union v. Rovella*, 494 F. Supp. 3d 210, 224–25, 230 (D. Conn. 2020), *aff'd*, 36 F.4th

16    54 (2d Cir. 2022) (observing that public interest and equity supported "the state's salutary efforts

17    to enhance transparency and promote accountability in law enforcement[ ]"). GEO's efforts to

18    shield its activities from scrutiny undermine the health and safety of Washingtonians and the

19    public's interest in transparency.

20    The public interest and equities tip sharply in favor of the Department's requested

21    injunction.

22

23

MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1
## V.    RELIEF REQUESTED

2       The Department seeks an order, enjoining GEO from preventing the Department's entry

3   into NWIPC and allowing the Department to enter NWIPC to investigate complaints made by

4   detainees that pose a threat to public health.

5       DATED this 30th day of July 2024.

6                        ROBERT W. FERGUSON
                            Attorney General

7

                        */s/ Marsha Chien*

8                        MARSHA CHIEN, WSBA 47020
                        CRISTINA SEPE, WSBA 53609

9                        Deputy Solicitors General
                        1125 Washington Street SE

10                       PO Box 40100
                       Olympia, WA 98504-0100

11                       (360) 753-6200
                       Marsha.Chien@atg.wa.gov

12                       Cristina.Sepe@atg.wa.gov

13                       ELLEN RANGE, WSBA 51334
                       ANDREW HUGHES, WSBA 49515

14                       Assistant Attorneys General
                       Complex Litigation Division

15                       800 Fifth Avenue, Suite 2000
                       Seattle, WA 98104

16                       (206) 464-7744
                       Ellen.Range@atg.wa.gov

17                       Andrew.Hughes@atg.wa.gov

18                       LILIA LOPEZ, WSBA 22273
                       Senior Counsel

19                       Agriculture and Health Division
                       1125 Washington Street SE

20                       Olympia, WA 98504-0100
                       (360) 586-6500

21                       Lilia.Lopez@atg.wa.gov

22                       *Counsel for Department of Health*

23

MOTION FOR PRELIMINARY          13          ATTORNEY GENERAL OF WASHINGTON
INJUNCTIVE RELIEF                                 1125 Washington Street SE
                                              PO Box 40100
                                       Olympia, WA 98504-0100
                                          (360) 753-6200

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 2:42PM
Linda Myhre Enlow
Thurston County Clerk

Hearing date:  August 9, 2024
Hearing time:  9:00 am
Judge/Calendar:
Hon. Wilson / Civil

**STATE OF WASHINGTON**
**THURSTON COUNTY SUPERIOR COURT**

| | |
|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF HEALTH, | NO.  24-2-02712-34 |
| Plaintiff, | [PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTIVE RELIEF |
| v. | |
| THE GEO GROUP, INC., | |
| Defendant. | |

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunctive Relief. The Court has considered the Parties' briefing, the relevant portions of the record, and the applicable law.

The Court, finding itself fully informed, hereby GRANTS Plaintiff's Motion for Preliminary Injunctive Relief. The Court hereby ORDERS The GEO Group, Inc., and its officers, agents, and employees, to allow entry and cooperate with the Department of Health's inspection of the Northwest ICE Processing Center under RCW 43.70.170. This preliminary injunction shall take effect immediately and shall remain in effect pending trial in this action of further order of this Court.

[PROPOSED] ORDER GRANTING
MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    IT IS SO ORDERED this _____ day of _____ 2024.

2

3

4                                        _____
                                         SUPERIOR COURT JUDGE

5    Presented by:

6    ROBERT W. FERGUSON
     Attorney General

7    /s/ Marsha Chien
     _____
8    MARSHA CHIEN, WSBA 47020
     CRISTINA SEPE, WSBA 53609
9    Deputy Solicitors General
     1125 Washington Street SE
10   PO Box 40100
     Olympia, WA 98504-0100
11   (360) 753-6200
     Marsha.Chien@atg.wa.gov
12   Cristina.Sepe@atg.wa.gov

13   ELLEN RANGE, WSBA 51334
     ANDREW HUGHES, WSBA 49515
14   Assistant Attorneys General
     Complex Litigation Division
15   800 Fifth Avenue, Suite 2000
     Seattle, WA 98104
16   (206) 464-7744
     Ellen.Range@atg.wa.gov
17   Andrew.Hughes@atg.wa.gov

18   LILIA LOPEZ, WSBA 22273
     Senior Counsel
19   Agriculture and Health Division
     1125 Washington Street SE
20   Olympia, WA 98504-0100
     (360) 586-6500
21   Lilia.Lopez@atg.wa.gov

22   Counsel for Department of Health

23

[PROPOSED] ORDER GRANTING              2          ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                                    1125 Washington Street SE
INJUNCTIVE RELIEF                                              PO Box 40100
                                                         Olympia, WA 98504-0100
                                                              (360) 753-6200

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 2:42PM
Linda Myhre Enlow
Thurston County Clerk

1

2

3

Hearing date: August 9, 2024
Hearing time: 9:00 am
Judge/Calendar:
Hon. Wilson     /Civil

4

5

6

7

**STATE OF WASHINGTON**
**THURSTON COUNTY SUPERIOR COURT**

8

9

STATE OF WASHINGTON,
DEPARTMENT OF HEALTH,

10

                                    Plaintiff,

11

        v.

12

THE GEO GROUP, INC.,

13

                                    Defendant.

NO.  24-2-02712-34

DECLARATION OF ERIC
ARROYO

14

I, ERIC ARROYO, hereby declare the following:

15

    1.    I am over the age of 18, competent to testify as to the matters herein, and make this

16

declaration based on my personal knowledge. I use the name Eric Smith as an alias when

17

performing inspections.

18

    2.    I am a Region 3 Compliance Safety and Health Investigator with the Department

19

of Labor and Industries (L&I). I have worked for L&I since January 2020. I am an industrial

20

hygienist.

21

    3.    After a federal district court ordered The GEO Group, Inc. (GEO) to allow L&I

22

to enter for an inspection, L&I performed a comprehensive inspection under its general authority,

23

RCW 49.17.070, at the Northwest Immigration Processing Center in Tacoma, Washington.

24

    4.    I and another L&I colleague performed this inspection on July 8, 2024. Per our

25

standard practice, we did not give GEO advance warning of this inspection. Upon our arrival,

26

DECLARATION OF ERIC ARROYO                    1

1    we went through security and then sat in the lobby, where we filled out a form, indicating our

2    inspection's authority and scope.

3        5.    Michael Knight, GEO's Assistant Facility Administrator, met us in the lobby. He

4    escorted us around the facility so we could complete our inspection.

5        6.    Our inspection took approximately four hours. We inspected the entire facility,

6    including all detainee cell blocks, the armory, the administration building, the storage

7    warehouse, the maintenance shop, all storage closets, all electrical panels, the kitchen, the

8    laundry, the loading dock, the kitchen store room, the medical bay, the high security/solitary

9    confinement cell block, and the exercise yard. My colleague used a cell phone to photograph the

10   safety violations that we found.

11

12       I declare under the penalty of perjury under the laws of the State of Washington that the

13   foregoing it true and correct.

14       SIGNED this _22nd_ day of July 2024, at Tacoma, Washington.

15

16

17                                    _Eric Arroyo_____

18                                    ERIC ARROYO
                                      Compliance Safety and Health Investigator
19                                    Washington State Labor & Industries

20

21

22

23

24

25

26

DECLARATION OF ERIC ARROYO            2            ATTORNEY GENERAL OF WASHINGTON
                                                        1125 Washington Street SE
                                                             PO Box 40100
                                                         Olympia, WA 98504-0100
                                                            (360) 753-6200

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 2:42PM
Linda Myhre Enlow
Thurston County Clerk

Hearing date: August 9, 2024
Hearing time: 9:00 am
Judge/Calendar:
Hon. Wilson      /Civil

**STATE OF WASHINGTON**
**THURSTON COUNTY SUPERIOR COURT**

| | |
|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF HEALTH, | NO. 24-2-02712-34 |
| Plaintiff, | DECLARATION OF JOE WESLEY BARBEE JR. |
| v. | |
| THE GEO GROUP, INC., | |
| Defendant. | |

I, JOE WESLEY BARBEE JR., hereby declare the following:

1.    I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge

2.    I am the Distribution Optimization Advisor for the Operations and Training Section of the State of Washington Department of Health (DOH or the Department) Office of Drinking Water, which is part of DOH's Environmental Public Health Program, where I have worked since 2023. I have a Degree in Science Business Management from Western Governor's University.

3.    I serve as a statewide consultant, evaluator, trainer, and investigator on water treatment operations for the Department's water system operator certification program. This involves planning, developing, administering and providing optimization training programs; developing innovative and effective guidance; and developing related training activities for enhancing operator performance to help protect public health.

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

4.      In this capacity, I inspect public water systems for compliance with drinking water regulations under WAC 246-290 and take water samples to help determine the system's compliance with water quality requirements under WAC 246-290-300 through -320.

5.      Public water systems are required to maintain the quality of the water the system provides to ensure the water is free from waterborne diseases and provide equitable access to clean water to all populations.

6.      DOH has received complaints from detainees inside the Northwest ICE Processing Center related to the detainee's drinking water between April 2023 and mid-July 2024. The complaints are generally about the temperature of the water, the color and smell of the water, and the lack of any water coming out of the faucets. Detainees have complained about incidents where there is no water to drink, flush toilets, or otherwise use, and other incidents where the tap water is brown.

7.      When individuals lack access to clean water, challenges may arise in extreme cases such as dysentery, cholera, and hepatitis A. Basic sanitary concerns can also arise when no running water is available. These health risks disproportionately affect vulnerable populations, such as the detainees who often have little or no say in their circumstances.

8.      Given the complaints received by DOH, I was asked to test the water.

9.      I arrived onsite on July 18, 2024 at 3:01 pm and approached the security station. I identified myself and asked for access to a water supply. Security asked me to sign in and took my ID card to be returned when I left the facility. Then I waited in the hall for management. When management arrived, Bruce Scott, the facility administrator, and two others, who did not identify themselves, escorted me to a restroom just off the front lounge area on the non-secure side of the facility. This restroom was the only location where GEO allowed me to perform a test.

10.     The administrator asked for identical samples of any water I took. I informed him that I would perform field tests on site, and I would not take any water from the premises.

11.    I performed water quality tests for chlorine, pH balance, temperature and magnesium. The results were as follows: free chlorine, Cl2, was 1.07mg/L, pH was 5.80 @ 3:22 PM, the temperature of the water was 24.1 degrees Celsius @ 3:15 PM, and Magnesium was 0.041mg/L @ 3:10 PM. These are some of the standard field tests we can use when determining water quality. They can provide an idea of what may be going on in a facility's system.

12.    For example, the pH shows that the water may be acidic since it is less than a neutral 7. Acidic water would slowly dissolve certain piping materials leading to rusting or brown colored water. Chlorine could exacerbate the level of acidity given the chlorine residual of 1.07, which is higher than typical, if elemental chlorine is used. I would tend to believe that the water has elemental chlorine for disinfection. However, without more conclusive testing I cannot be certain. The poor testing area would cause me to question any results I received.

13.    The water source used for testing was a bathroom sink with a blending faucet that mixed the hot and cold water together to achieve a certain temperature. Typically, this would not be acceptable for water quality tests because bathrooms in general are poor testing areas due to the potential for contamination of the testing material. There is a chance of fecal particulate matter lingering (or occurring) in the air during testing. The sink may also be prone to backsplash. It is also not possible to tell if the blending valve is fully shut. If it is not fully closed, then heated water from the boiler can bleed in and skew results of raw (source) water testing. Hot water cannot be used for accurate testing because the heat changes the characteristics of the water. However, due to the desire to obtain some information, I performed the field testing.

14.    The testing environment was under intense scrutiny by the facility staff and the supervisor, who asked questions about every step and every chemical/reagent I used.

15.    I believe that any bacteriological testing at that location would be inconclusive due to the high potential of contamination from the environment (restroom) and the blending valve on the sink.

16.    I am unable to properly sample water quality at the facility without access to a

DECLARATION OF JOE WESLEY
BARBEE JR.

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    suitable water source.

2          I declare under the penalty of perjury under the laws of the State of Washington that the

3    foregoing it true and correct.

4          SIGNED this 25 day of July 2024, at Tumwater, Washington.

5

6

7

8

9

10                              JOE WESLEY BARBEE JR.

11                              Office of Drinking Water Advisor
                                Washington State Department of Health
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 2:43PM
Linda Myhre Enlow
Thurston County Clerk

1

Hearing date:  August 9, 2024
Hearing time:  9:00 am
Judge/Calendar:
Hon. Wilson / Civil

2

3

4

5

6

7

8

9

**STATE OF WASHINGTON**
**THURSTON COUNTY SUPERIOR COURT**

10

| | |
|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF HEALTH, | NO.  24-2-02712-34 |
| Plaintiff, | DECLARATION OF MARSHA CHIEN |
| v. | |
| THE GEO GROUP, INC., | |
| Defendant. | |

11

12

13

14

15

16

I, MARSHA CHIEN, hereby declare the following:

17

1.     I am a Deputy Solicitor General representing Defendants Jay Inslee, in his official

18

capacity as the Governor of the State of Washington, and Robert Ferguson, in his official capacity

19

as the Attorney General of the State of Washington (collectively the State) in the below-referenced

20

matters, and make this declaration as such. I am over eighteen years of age and am competent to

21

testify about the matters contained herein.

22

2.     Attached as Exhibit A is a true and correct copy of the Order, *Department of Labor*

23

*and Industries v. GEO Secure Services, LLC*, No. C24-5095 BHS, Doc. No. 50 (W.D. Wash. July 1,

24

2024).

25

3.     Attached as Exhibit B is a true and correct copy of the Order, *Department of Health*

26

DECLARATION OF MARSHA CHIEN                    1                    ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    *v. The GEO Group, Inc.*, No. C24-5029 BHS, Doc. No. 49 (W.D. Wash. July 1, 2024).

2       I declare under the penalty of perjury under the laws of the State of Washington that the

3    foregoing it true and correct.

4       EXECUTED this 29th day of July 2024, at Seattle, Washington.

5

6                    */s/ Marsha Chien*
                     MARSHA CHIEN, WSBA 47020

7                     *Deputy Solicitor General*
                     1125 Washington Street SE

8                      PO Box 40100
                     Olympia, WA 98504-0100

9                      (360) 753-6200
                     Marsha.Chien@atg.wa.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEPARTMENT OF LABOR AND
INDUSTRIES OF THE STATE OF
WASHINGTON,

　　　　　　　　　　Plaintiff,

　　v.

GEO SECURE SERVICES, LLC; THE
GEO GROUP, INC.,

　　　　　　　　　　Defendant.

CASE NO. C24-5095 BHS

ORDER

　　This matter is before the Court the Washington Department of Labor and Industries (L&I)'s motions to remand this matter to the Pierce County Superior Court, Dkt. 10; to consolidate this matter with *State of Washington Dep't of Health v. The GEO Group, Inc.*, No. C24-5029 BHS, Dkt. 18; and to preliminary enjoin GEO[1] from denying the agency access to inspect the Northwest ICE[2] Processing Center (the NWIPC)—the sole immigration detention facility in Washington which GEO operates pursuant to a

---

[1] The defendants in this matter are both GEO Secure Services, LLC, and the GEO Group, Inc. Dkt. 15, ¶¶ 2, 3. For simplicity, the Court refers to them collectively as "GEO."

[2] Immigration and Customs Enforcement.

1    contract with ICE, Dkt. 23. L&I seeks such an injunction pursuant to both HB 1470 § 3[3]

2    (a law requiring L&I to "conduct routine, unannounced inspections of workplace

3    conditions at private detention facilities, including work undertaken by detained

4    persons") and RCW 49.17.070 (a statute authorizing L&I to inspect conditions at

5    worksites generally).

6          GEO removed the action to this Court under the "federal officer" removal statute,

7    28 U.S.C. §1442(a)(1). This statute generally provides that any person acting under an

8    officer or agency of the United States may remove an action to federal court when that

9    person can assert a "colorable federal defense." *Jefferson County v. Acker*, 527 U.S. 423,

10   431 (1999).

11         GEO asserts a colorable federal defense to L&I's efforts to inspect the NWIPC

12   under HB 1470 § 3. In a recent order in a related case, this Court ruled that HB 1470 § 3

13   is unconstitutional as applied to GEO as the operator of the NWIPC. *See The GEO*

14   *Group, Inc. v. Inslee*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at

15   *24–26 (W.D. Wash. Mar. 8, 2024). The Court explained that HB 1470 "was designed to

16   apply to only the NWIPC and any other private immigration detention facility that may

17   eventually exist in Washington" and that "§ 3 discriminates against [GEO] in violation of

18   the intergovernmental immunity doctrine." *Id.* at *16, 26. The Court preliminarily

19   enjoined the State and its agencies, including L&I, from enforcing HB 1470 § 3 against

20   GEO. *Id.* at *30. L&I's motion to remand is accordingly denied.

21

22         [3] HB 1470 § 3 is codified as RCW 70.395.050.

1    The Court also declines to consolidate this case with *State of Washington Dep't of*

2    *Health*, No. C24-5029 BHS. Because L&I is not entitled to inspect the NWIPC under HB

3    1470 § 3, the primary remaining issue in this case is whether it is entitled to do so under

4    RCW 49.17.070. This statute authorizes L&I to conduct reasonable inspections of any

5    workplace under certain circumstances. By contrast, the primary issue in *State of*

6    *Washington Dep't of Health*, No. C24-5029 BHS, is whether the Washington Department

7    of Health (DOH) is entitled to inspect the NWIPC under an entirely different statute,

8    RCW 43.70.170. That statute authorizes DOH to inspect any condition constituting a

9    threat to the public health. These cases concern different statutes and, in turn, involve

10   different questions of law and fact. The motion to consolidate is denied.

11        To the extent L&I seeks an injunction under HB 1470 § 3, such relief is plainly

12   foreclosed by the Court's order declaring that law to be unconstitutional as applied to

13   GEO. *See Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26. However, to the

14   extent L&I seeks a preliminary injunction under RCW 49.17.070, it demonstrates an

15   entitlement to such relief. This statute is a generally applicable safety and health law and,

16   therefore, it does not suffer from the same constitutional deficiency as HB 1470 § 3.

17        The Court also rejects GEO's assertion that it is entitled to "derivative sovereign

18   immunity" against L&I's claim under RCW 49.17.070. That immunity generally

19   provides federal contractors a defense to liability when the contractor's actions are both

20   authorized and directed by a government official *and* performed pursuant to an Act of

21   Congress. Because GEO does not identify any federal law prohibiting state legislatures

22   from imposing generally applicable safety and health laws like RCW 49.17.070 on

1  private immigration detention facilities, it is not immune from L&I's claim under this

2  statute. L&I's motion for a preliminary injunction is accordingly granted in part and

3  denied in part.

## I.   BACKGROUND

5      In 2023, the Washington legislature enacted HB 1470, which amended chapter

6  70.395 RCW to impose numerous requirements on "private detention facilities."

7  Following the passage of this law, GEO sued Washington's governor, Jay Inslee, and

8  attorney general, Robert Ferguson, in a different case before this Court, seeking to enjoin

9  the enforcement of HB 1470 against it as the operator of the NWIPC. *See* Dkt. 1 in

10  *Inslee*, No. C23-5626 BHS. GEO claimed, among other things, that HB 1470 is

11  unconstitutional as applied to it because the law impermissibly discriminates against it in

12  violation of the Supremacy Clause's intergovernmental immunity doctrine. *Id.* ¶¶ 74–83.

13      After GEO filed that lawsuit, two L&I officials attempted to inspect the NWIPC

14  on two occasions in December 2023. On December 27, they visited the NWIPC and

15  attempted to inspect workplace conditions at the facility pursuant to HB 1470 § 3. Dkt.

16  27-5 at 4. The officials explained to the NWIPC's facility administrator, Bruce Scott, that

17  they were "[t]here to open a comprehensive workplace safety and health inspection." *Id.*

18  Scott explained that he had to make a telephone call "before he [gave] [them]

19  permission" to enter the facility. *Id.* Scott left the lobby area and, shortly thereafter,

20  returned and told the L&I officials that "ICE has directed us to not allow you entry

21  today." *Id.* Scott accordingly denied the L&I officials access to the NWIPC. *See id.*

22

1    These L&I officials subsequently applied for—and obtained—a search warrant

2  from the Pierce County Superior Court to inspect the NWIPC under both HB 1470 § 3

3  *and* RCW 49.17.070. Dkt. 27-4 at 2. The warrant compelled GEO to provide L&I access

4  to the NWIPC "to allow the conducting therein of a safety and health inspection for the

5  purpose of ascertaining and causing to be corrected any conditions presenting safety or

6  health hazards to employees of GEO . . . under chapter 49.17 [RCW], chapter 70.395

7  RCW and Title 296 [WAC]." Dkt. 27-6 at 3.

8    On December 29, 2023, the two L&I officials returned to the NWIPC and served

9  the search warrant on three GEO employees, including GEO's assistant facility

10 administrator, Michael Knight, and demanded access to the facility so that they could

11 inspect it for workplace hazards. Dkt. 27-2, ¶ 5 Dkt. 3, ¶ 3. Knight left the front lobby

12 area to meet with several ICE officials and, together, they reviewed the warrant. Dkt. 3,

13 ¶¶ 5, 6. These ICE officials then "directed GEO to deny access to L&I for the requested

14 inspection." *Id.* ¶ 6. Knight, accompanied by an ICE officer, Ryan Jennings, returned to

15 the front lobby area and Jennings informed the L&I officials that "ICE is denying entry

16 into the facility." *Id.* ¶ 7.

17    L&I sued GEO in Pierce County Superior Court, requesting an injunction

18 requiring GEO to provide the agency access to inspect the NWIPC under both HB 1470 §

19 3 and RCW 49.17.070. Dkt. 1-3, ¶¶ 21, 30.

20    GEO removed the case to this Court under the "federal officer" removal statute, 28

21 U.S.C. § 1442(a)(1). Dkt. 1. GEO asserts that it was entitled to remove the case pursuant

22 to this statute because it has "colorable federal defenses to Plaintiff's claims," including

that HB 1470 § 3 impermissibly discriminates against it in violation of the Supremacy

Clause's intergovernmental immunity doctrine. *Id.* at 19, 30–32.

L&I moves to remand this matter to the Pierce County Superior Court, arguing

that the federal officer removal statute does not apply because GEO is unable to assert a

colorable federal defense. Dkt. 10 at 3. L&I also moves to consolidate this matter with

*State of Washington Dep't of Health*, No. C24-5029 BHS. Dkt. 18. In that case, DOH

seeks to enjoin GEO from denying it access to the NWIPC so that DOH may inspect the

facility under both HB 1470 § 3 (which also requires DOH to inspect "private detention

facilities" for conditions relating to food service and handling, sanitation, hygiene, and

nutrition) and RCW 43.70.170 (which authorizes DOH to inspect any place containing a

condition constituting a threat to the public health). *See* Dkt. 1-2, ¶¶ 5.2–6.1, in No. C24-

5029 BHS. L&I finally moves to preliminarily enjoin GEO from denying it access to the

NWIPC to conduct inspections under both HB 1470 § 3 and RCW 49.17.070, arguing

that these laws plainly require GEO to provide the agency such access. Dkt. 23 at 3, 6–8,

11–12.

After L&I filed these motions, the Court entered its order in *Inslee* declaring HB

1470 § 3 to be unconstitutional as applied to GEO as the operator of the NWIPC. ___ F.

Supp. 3d. ___, 2024 WL 1012888, at *24–26. The Court ruled that this law

impermissibly discriminates against GEO in violation of the Supremacy Clause's

intergovernmental immunity doctrine. *Id.* The Court preliminarily enjoined "[t]he State

and its agencies" from enforcing HB 1470 § 3 against GEO as the operator of the

NWIPC. *Id.* at *30.

That order materially affects the merits of L&I's motions.

## II. DISCUSSION

**A.  L&I's motion to remand is denied because GEO asserts a colorable federal defense.**

L&I contends that, to remove this case under 28 U.S.C. § 1442(a)(1), GEO must assert a "colorable federal defense" justifying its act of denying L&I access to the NWIPC and that GEO is unable to assert such a defense. Dkt. 10 at 3, 7. L&I does not dispute that GEO satisfies the remaining requirements of this statute. *See generally id.*

GEO responds that its notice of removal asserts numerous colorable federal defenses, one of which is that HB 1470 § 3 impermissibly discriminates against it in violation of the Supremacy Clause's intergovernmental immunity doctrine. Dkt. 31 at 23.

The federal officer removal statute allows persons acting under a federal officer or agency to remove an action to federal court when the action relates to any act performed under color of federal office:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

"The purpose of the federal officer removal statute is 'to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties.'"

1   *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244

2   (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). "The right of

3   removal is 'absolute for conduct performed under color of federal office,' and the 'policy

4   favoring removal should not be frustrated by a narrow, grudging interpretation of

5   § 1442(a)(1).'" *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted) (quoting

6   *Manypenny*, 451 U.S. at 242).

7        A party seeking removal under § 1442(a)(1) "bears the burden of showing that (a)

8   it is a 'person'[4] within the meaning of the statute; (b) there is a causal nexus between its

9   actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it

10  can assert a 'colorable federal defense.'" *Goncalves*, 865 F.3d at 1244 (internal quotation

11  marks omitted) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th

12  Cir. 2006)).

13       When an action is properly removed under § 1442(a), the district court has "the

14  power to hear claims that would not be independently removable." *Watkins v. Grover*,

15  508 F.2d 920, 921 (9th Cir. 1975). Indeed, if "some of the [plaintiffs'] allegations . . . do

16  not relate to the [defendants'] acts under color of federal office, 'removal need not be

17  justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only

18  apply to one claim to remove the case.'" *Baker v. Atlantic Richfield Co.*, 962 F.3d 937,

19  945 (7th Cir. 2020) (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir.

20  2017)).

21

22       [4] "[C]orporations are 'person[s]' under § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244.

L&I does not dispute that GEO satisfies the first two requirements for removal under §1442(a)(1). It instead argues that GEO is unable to assert a colorable federal defense. The Court disagrees. One of the defenses asserted in GEO's notice of removal is that HB 1470 § 3 impermissibly discriminates against GEO in violation of the intergovernmental immunity doctrine. Dkt. 1, ¶¶ 30–32. Under this Court's order in *Inslee*, this defense is not only colorable, but valid. *See* ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26. For this reason alone, L&I's motion to remand is **DENIED**.

**B.    L&I's motion to consolidate is denied because this matter is not sufficiently similar to *State of Washington Dep't of Health*, No. C24-5029 BHS.**

L&I moves to consolidate this matter with *State of Washington Dep't of Health*, No. C24-5029 BHS, asserting that these two cases are "very similar" because they "involv[e] two state agencies, the same Defendant, the same facility, roughly the same time frame, and nearly identical legal arguments." Dkt. 18 at 2. GEO responds that, considering this Court's order in *Inslee*, the issues in these cases are not sufficiently similar to warrant consolidation. Dkt. 36 at 5. GEO contends that the primary issue in this case is whether L&I is entitled to inspect the NWIPC for workplace hazards under RCW 49.17.070, whereas the primary issue in *State of Washington Dep't of Health*, No. C24-5029 BHS, is whether DOH is entitled to inspect the NWIPC for any "threat to the public health" under RCW 43.70.170. *Id.* at 8–10.

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall*

1  *v. Hall*, 584 U.S. 59, 77 (2018). "To determine whether to consolidate, a court weighs the

2  interest of judicial convenience against the potential for delay, confusion and prejudice

3  caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp.

4  805, 807 (N.D. Cal. 1989).

5          Judicial convenience is not served by consolidating these two cases. The only

6  similar claims in these cases are DOH's and L&I's claims that they are each entitled to

7  inspect the NWIPC under HB 1470 § 3. These claims are easily resolvable considering

8  the Court's order declaring HB 1470 § 3 to be unconstitutional as applied to GEO as the

9  operator of the NWIPC. *See Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26.

10         The remaining claims in these cases are not similar. DOH seeks to inspect the

11  NWIPC pursuant to a statute authorizing it to inspect "any . . . place" containing "any

12  article or condition constituting a threat to the public health including, but not limited to,

13  outbreaks of communicable diseases, food poisoning, contaminated water supplies, and

14  all other matters injurious to the public health." RCW 43.70.170. L&I seeks to inspect the

15  NWIPC pursuant to an entirely different statute authorizing it to inspect "any . . .

16  workplace" "in carrying out [its] duties under" WISHA. RCW 49.17.070(1)(a)–(b).

17  These cases accordingly present different legal issues.

18         DOH and L&I also attempted to inspect the NWIPC at different times and under

19  different circumstances. DOH attempted to inspect the NWIPC on two occasions in

20  November 2023. Dkt. 12, ¶¶ 13–16, in No. C24-5029 BHS. During these visits, DOH

21  sought to inspect the facility pursuant to *only* HB 1470 § 3. *Id.* It did *not* attempt to

22  inspect the facility under RCW 43.70.170. *See id.* By contrast, L&I attempted to inspect

1   the NWIPC on two occasions in December 2023. Dkt. 27-2, ¶ 4; Dkt. 27-5 at 4. During

2   its second visit to the NWIPC, L&I attempted to inspect the facility pursuant to a search

3   warrant, which expressly stated that L&I was authorized to inspect the NWIPC under HB

4   1470 *and* WISHA, chapter 49.17 RCW.[5] *See* Dkt. 27-6 at 3.

5        Because DOH never attempted to inspect the NWIPC under RCW 43.70.170, an

6   issue exists as to whether that agency has constitutional standing to seek an injunction

7   pursuant to this statute. L&I does not face a similar problem.

8        These actions accordingly do not involve sufficiently common issues of law or

9   fact to warrant consolidation. L&I's motion to consolidate is **DENIED**.

10  **C.      L&I's motion for a preliminary injunction is granted only insofar as the
         agency seeks to inspect the NWIPC under RCW 49.17.070.**

11       L&I moves to preliminarily enjoin GEO from denying it access to inspect the

12  NWIPC pursuant to both HB 1470 § 3 and RCW 49.17.070, arguing that these laws

13  plainly require GEO to provide the agency such access. Dkt. 23 at 3, 8–9, 12.

14       GEO responds that, considering this Court's order in *Inslee*, L&I "has no chance

15  of succeeding on the merits because its attempts to enter, inspect, and enforce HB 1470

16  are unconstitutional under the doctrine of Intergovernmental Immunity due to

17  impermissible discrimination." Dkt. 38 at 18. GEO further asserts that L&I never

18  attempted to inspect the NWIPC under RCW 49.17.070. *Id.* at 6. GEO contends that,

19  even so, it is entitled to "derivative sovereign immunity" against L&I's claim under this

---

[5] The warrant also stated that L&I was entitled to inspect the NWIPC under Title 296 WAC. Dkt. 27-6 at 3.

1   statute. *Id.* at 12–17. This immunity generally provides federal contractors a defense to

2   liability when the contractor's actions are both authorized and directed by a government

3   official and performed pursuant to an Act of Congress. GEO asserts that it is entitled to

4   this immunity because ICE directed it to deny L&I access to the NWIPC. *Id.* at 13, 16–

5   17.

6           L&I's reply acknowledges this Court's order enjoining it from enforcing HB 1470

7   § 3 against GEO, but asserts that the order was wrongly decided: "Although the Court

8   partially enjoined HB 1470, DOH & L&I do not concede that HB 1470 is

9   unconstitutional." Dkt. 42 at 3 n.3. L&I also contends that, contrary to GEO's assertion

10  otherwise, the agency *did* attempt to inspect the NWIPC under RCW 49.17.070,

11  evidenced by the search warrant that it served on GEO and which expressly

12  "command[ed] entry under 'chapter 49.17 Revised Code of Washington.'" *Id.* at 6

13  (quoting Dkt. 27-6 at 3). L&I further asserts that "GEO's derivative sovereign

14  [immunity] defense fails because it is a defense to damages, not injunctive relief." Dkt.

15  42 at 6. This is so, L&I argues, because the sovereign immunity enjoyed by federal

16  officers themselves does not apply to suits seeking injunctive relief. *Id.* at 7. L&I

17  accordingly contends, "Just as sovereign immunity itself does not bar suits seeking only

18  prospective injunctive relief, so too for *derivative* sovereign immunity." *Id.* L&I finally

19  asserts that GEO is not entitled to derivative sovereign immunity because it "cannot meet

20  its burden to show that blocking access to state inspectors was *compelled* by its contract

21  with ICE." *Id.* at 7.

22

To obtain preliminary injunctive relief, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of such relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020).

L&I's claim seeking an injunction under HB 1470 § 3 is plainly foreclosed by this Court's order in *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26, 30. That order declared HB 1470 § 3 to be unconstitutional as applied to GEO, and preliminarily enjoined "[t]he State and its agencies" from enforcing HB 1470 § 3 against it. *Id.* at *30. To the extent L&I seeks a preliminary injunction allowing it to inspect the NWIPC under HB 1470 § 3, its motion is **DENIED**.

However, L&I's claim seeking an injunction under RCW 49.17.070 has merit. There is no doubt that this statute's plain terms apply to the NWIPC. Indeed, the statute authorizes L&I to conduct reasonable inspections of *any* workplace:

> (1) . . . [T]he director [of the department of labor and industries], or his or her authorized representative, in carrying out his or her duties under this chapter, upon the presentation of appropriate credentials to the owner, manager, operator, or on-site person in charge of the worksite, is authorized:
> (a) To enter without delay and at all reasonable times the factory, plant, establishment, construction site, or other area, workplace, or

environment where work is performed by an employee of an employer;[6] and

(b) To inspect, survey, and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, *any such workplace* and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee.

RCW 49.17.070(1)(a)–(b) (emphasis added).

The statute also requires L&I to obtain the consent of any owner or operator of a worksite to conduct such an inspection, unless the agency obtains a search warrant under RCW 49.17.075[7] or an exception to constitutional warrant requirements applies. RCW 49.17.070(3)–(4).

Here, L&I obtained a search warrant from the Pierce County Superior Court that expressly compelled GEO to provide the agency access to inspect the NWIPC under WISHA, chapter 49.17 RCW:

---

[6] The Washington Supreme Court has held that "detained workers at a private detention facility are 'employees' within the meaning of the [Minimum Wage Act]." *Nwauzor v. The Geo Group, Inc.*, 2 Wn.3d 505, 526 (2023). GEO does not dispute that the detained workers at the NWIPC are also employees under WISHA, which defines "employee" broadly:

"Employee" means an employee of an employer who is employed in the business of his or her employer whether by way of manual labor or otherwise and every person in this state who is engaged in the employment of or who is working under an independent contract the essence of which is his or her personal labor for an employer under this chapter whether by way of manual labor or otherwise.

RCW 49.17.020(5).

[7] RCW 49.17.075 authorizes L&I to "apply to a court of competent jurisdiction for a search warrant authorizing access to any factory, plant, establishment, construction site, or other area, workplace, or environment where work is performed by an employee of an employer." The statute also provides that "[t]he court may upon such application issue a search warrant for the purpose requested." *Id.*

NOW THEREFORE, by the authority of this Court of the State of Washington, you are hereby commanded to allow entry into the workplace of GEO Secure Services LLC . . . to allow the conducting therein of a safety and health inspection for the purpose of ascertaining and causing to be corrected any conditions presenting safety or health hazards to employees of GEO Secure Services LLC, under *chapter 49.17 Revised Code of Washington* (RCW), chapter 70.395 RCW and Title 296 of the Washington Administrative Code (WAC).

Dkt. 27-6 at 3 (emphasis added).

Upon obtaining this warrant, two L&I officials visited the NWIPC, served the warrant on GEO, and demanded access to the facility. Dkt. 27-2, ¶ 5; Dkt. 3, ¶ 3. Therefore, GEO's assertion that L&I never attempted to inspect the NWIPC under RCW 49.17.070 is patently false. *See* Dkt. 38 at 6.

The Court also rejects GEO's arguments that it is entitled to derivative sovereign immunity against L&I's claim under RCW 49.17.070. To understand the degree to which sovereign immunity extends to federal contractors, the Court must first clarify the origins of sovereign immunity and its application to federal officers themselves.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is derived from the British common law doctrine that the King was infallible." *Schilling v. United States House of Representatives*, 102 F.4th 503, 506 (D.C. Cir. 2024) (citing Edwin M. Borchard, *Government Liability in Tort*, 34 Yale L.J. 1, 2 n.2 (1924)). "A suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' *or if the effect of the judgment would be to 'restrain the Government from acting, or compel it to act*.'"

*Schilling*, 102 F.4th at 506 (emphasis added) (internal citation omitted) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949)).

L&I therefore incorrectly asserts that sovereign immunity is merely "a defense to damages, not injunctive relief." Dkt. 42 at 6. The Supreme Court has stressed that "[t]here are the *strongest* reasons of public policy for the rule that [specific] relief cannot be had against the sovereign." *Larson*, 337 U.S. at 704 (emphasis added). "The Government" serves "as representative of the community as a whole" and "'the interference of the Courts with the performance of ordinary duties of the executive departments of the government, would be productive of nothing but mischief.'" *Id.* (quoting *Decatur v. Paulding*, 1840, 14 Pet. 497, 516, L. Ed. 559).

However, government officials are *not* immune from suits for injunctive relief when they "allegedly act[] 'beyond [federal] statutory authority or unconstitutionally.'" *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (quoting *Larson*, 337 U.S. at 693). This is because "such *ultra vires* action by a federal officer 'is beyond the officer's power and is, therefore, not the conduct of the sovereign.'"[8] *Pollack*, 703 F.3d at 120 (quoting *Larson*, 337 U.S. at 690).

---

[8] In support of its assertion that sovereign immunity does not apply to suits seeking only injunctive relief, L&I cites both *Philadelphia Co. v. Stimson*, 223 U.S. 605, 619–20 (1912), and *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Dkt. 42 at 7. Those cases, however, confirm the well-established principle that federal officers are not immune from suits for injunctive relief when they have engaged in *ultra vires* action. In *Stimson*, the Court stated that, "in case of an injury threatened by [a federal officer's] *illegal* action, the officer cannot claim immunity from injunction process." 223 U.S. at 619 (emphasis added). In *Armstrong*, the Court similarly explained that "[t]he ability to sue to enjoin *unconstitutional* actions by . . . federal officers is the creation of courts of equity, and reflects a long history of judicial review of

By logical extension, when the Government's "authority to carry out [a] project [is] validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of [a] *contractor* for executing its will." *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20–21 (1940) (emphasis added). To this extent, "government contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943). "That immunity, however, unlike the sovereign's, is not absolute." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016).

To be entitled to such immunity, a federal contractor's conduct must have been *both* "all authorized and directed by the Government of the United States' *and* 'performed pursuant to [an] Act of Congress.'" *Campbell-Ewald*, 577 U.S. at 167 (emphasis added) (quoting *Yearsley*, 309 U.S. at 20). Therefore, when "a Government agent ha[s] 'exceeded his authority' or the authority 'was not validly conferred'" by Congress, "the agent could be held liable for [his] conduct." *Campbell-Ewald*, 577 U.S. at 167 (quoting *Yearsley*, 309 U.S. at 21). This immunity is accordingly "limited to cases in which a contractor 'had no discretion . . . and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Associates*, 797 F.3d 720, 732 (9th

---

*illegal* executive action, tracing back to England." 575 U.S. at 327 (emphasis added). Neither case held that sovereign immunity *never* applies to suits seeking injunctive relief against federal officers.

1   Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th

2   Cir. 2008)).[9]

3           Nothing in *Yearsley* limits the immunity enjoyed by federal contractors to suits

4   seeking monetary damages. The decision makes clear that this immunity ensures that

5   "there is no *liability* on the part of the contractor for executing [Congress's] will."

6   *Yearsley*, 309 U.S. at 21 (emphasis added). The term "liability" simply means "[t]he

7   quality or state of being legally obligated or accountable; legal responsibility to another

8   or to society, enforceable by civil remedy or criminal punishment." BLACK'S LAW

9   DICTIONARY 997 (9th ed. 2009). This term should not be confused with any requested

10  "relief," which is "[t]he redress or benefit, esp[ecially] equitable in nature (such as an

11  injunction or specific performance), that a party asks of a court." *Id.* at 1404. To provide

12  L&I its requested relief in this case—an injunction prohibiting GEO from denying the

13  agency access to inspect the NWIPC for workplace hazards—the Court must first find

14  GEO liable—namely, that it is legally obligated to provide L&I such access under RCW

15  49.17.070.

16          Derivative sovereign immunity thus provides federal contractors under certain

17  circumstances a defense to *liability*—that is, being legally obligated, accountable, or

18  responsible—regardless of the particular relief sought. *Yearsley*, 309 U.S. at 20;

19

20          [9] The Supreme Court has disagreed with the Ninth Circuit "to the extent that it described *Yearsley* as 'establish[ing] a narrow rule regarding claims arising out of property damage caused by public works projects.'" *Campbell-Ewald*, 577 U.S. at 167 n.7 (quoting *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014)). "Critical in *Yearsley* was not the involvement of public works, but the contractor's performance in compliance with all federal directions." *Campbell-Ewald*, 577 U.S. at 167 n.7.

1   BLACK'S, *supra*, at 997. The extension of sovereign immunity to federal contractors in

2   this manner is entirely consistent with sovereign immunity's application to federal

3   officers themselves. *See Schilling*, 102 F.4th at 506 (sovereign immunity generally

4   prevents "suit[s] . . . against the sovereign" when, among other things, "*the effect of the*

5   *judgment would be to 'restrain the Government from acting, or compel it to act'*"

6   (emphasis added) (quoting *Larson*, 337 U.S. at 704).

7          Nevertheless, GEO is not immune from L&I's claim under RCW 49.17.070. The

8   congressional act relevant to this case—the Immigration and Nationality Act (INA)—

9   authorizes the federal government to contract with private entities to operate privately-

10  owned immigration detention facilities. *See United States v. California*, 921 F.3d 865,

11  882 n.7 (9th Cir. 2019) ("[T]he INA contemplates use of both federal facilities *and*

12  nonfederal facilities with which the federal government contracts." (citing 8 U.S.C. §§

13  1231(g), 1103(a)(11)).

14         The contract between ICE and GEO—in at least *three* separate provisions—

15  expressly requires GEO to operate the NWIPC in compliance with all applicable state

16  safety and health laws. Concerning workplace safety laws specifically, the contract

17  provides that "[a] safety program shall be maintained in compliance with *all* applicable

18  Federal, state and local laws, statutes, regulations and codes. The Contractor shall comply

19  with the requirements of the *Occupational Safety and Health Act of 1970* and all codes

20  and regulations associated with 29 CFR 1910 and 1926." Dkt. 27-9 at 87.

21         RCW 49.17.070 plainly falls under this contractual provision. As L&I asserts, the

22  Occupational Safety and Health Act (the OSH Act) "delegates its authority to

1    Washington to enforce workplace safety laws because Washington maintains a 'State

2    Plan' that meets or exceeds federal standards." Dkt. 23 at 6 (citing 29 U.S.C. § 667(b),

3    (c); LAWS OF 1973, ch. 80, § 1).[10] "Since 1975, L&I has assumed the federal

4    Occupational Safety and Health Administration (OSHA)'s responsibility for enforcing

5    occupational safety and health standards in Washington State." Dkt. 23 at 6 (citing 24-1

6    at 2). OSHA's regional administrator confirmed in a letter to L&I's assistant director for

7    the Division of Occupational Safety and Health that Washington's state plan "includes

8    enforcement with respect to the employees of federal contractors, subject to limited

9    exceptions." Dkt. 24-1 at 2. GEO does not assert that any exception applies here.

10   Therefore, the NWIPC is plainly subject to L&I investigations under RCW 49.17.070.

11          Separately, regarding any services that GEO is required to provide under the

12   contract, another provision states: "*All* services must comply with the Performance Work

13   Statement (PWS) and *all* applicable federal, *state, and local laws and standards. Should a*

14   *conflict exist between any of these standards, the most stringent shall apply*." Dkt. 27-9 at

15   53 (emphasis added). And another provision requires GEO to operate and maintain the

16

17          [10] The OSH Act provides: "Any State which, at any time, desires to assume responsibility
     for development and enforcement of occupational safety and health standards relating to any

18   occupational safety or health issue . . . shall submit a State plan for the development of such
     standards and their enforcement." 29 U.S.C. § 667(b). WISHA accordingly grants L&I the

19   authority to maintain such a plan:

20          The director is authorized to adopt by rule any provision reasonably necessary to
            enable this state to qualify a state plan under section 18 of the Occupational
            Safety and Health Act of 1970 . . . to enable this state to assume the responsibility

21          and enforcement of occupational safety and health standards in all workplaces
            within this state subject to the legislative jurisdiction of the state of Washington.

22   RCW 49.17.230.

ORDER - 20

1   NWIPC in accordance with all applicable federal, state, and local safety and health laws

2   and, in the event of a conflict, the most stringent shall apply:

> The facility . . . shall be designed, constructed, *operated*, and *maintained* in
> accordance with *all* applicable federal, *state, and local laws, regulations*
> *codes, guidelines, and policies. In the event of a conflict between federal,*
> *state, or local codes, regulations or requirements, the most stringent shall*
> *apply. In the event there is more than one reference to a safety, health*, or
> environmental *requirement in an applicable law, standard, code,*
> *regulation or Government policy, the most stringent requirement shall*
> *apply.*

Dkt. 27-9 at 86 (emphasis added).

These provisions plainly require GEO to comply with generally applicable state

safety and health laws like RCW 49.17.070.[11] "When examining similar language in a

different federal contract, the Ninth Circuit held that a state law is not 'applicable' if it

violates the Constitution." *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *20 n.11

(citing *Gartell Const. Inc. v. Aubry*, 940 F.2d 437, 440 (9th Cir. 1991)). In *Inslee*, this

Court accordingly ruled that, because HB 1470 § 3 impermissibly discriminates against

GEO in violation of the Supremacy Clause's intergovernmental immunity doctrine, the

law also does not apply to GEO under its contract with ICE. ___ F. Supp. 3d ___, 2024

WL 1012888, at *24–26. Central to that ruling was the Court's conclusion that HB 1470

§ 3 "was designed to apply to only the NWIPC and any other private immigration

detention facility that may eventually exist in Washington." *Id.* at *16.

---

[11] GEO asserts that a separate provision of the contract requires it to follow ICE's 2011 Performance Based National Detention Standards (PBNDS) when an otherwise applicable state law conflicts with those standards. Dkt. 38 at 15–16. In *Inslee*, the Court expressly rejected this argument. ___ F. Supp. 3d ___, 2024 WL 1012888, at *20 n.10. In any event, GEO does not demonstrate that RCW 49.17.070 conflicts with the PBNDS.

1    RCW 49.17.070 does not suffer from the same constitutional deficiency.

2    "Historically, the states' police powers are broad in permitting state decisions that relate

3    to public health, safety, and welfare, so long as state laws do not violate the federal

4    Constitution." *Velasquez-Rios v. Wilkinson*, 988 F.3d 1081, 1088 (9th Cir. 2021). State

5    laws similarly are not permitted to "alter[] or contradict[]" federal statutes governing

6    immigration removal decisions. *Velasquez-Rios*, 988 F.3d at 1089. However, "[a]bsent

7    federal law to the contrary, the Supremacy Clause . . . leaves considerable room for states

8    to enforce their generally applicable laws against federal contractors." *Geo Group, Inc. v.*

9    *Newsom*, 50 F.4th 745, 755 (9th Cir. 2022) (en banc). The Supremacy Clause accordingly

10   tolerates "many generally applicable health and safety laws." *Id.* at 755 n.4.

11   RCW 49.17.070 is such a law: it applies to "*any* . . . workplace" "where work is

12   performed by an employee of an employer." RCW 49.17.070(1)(a)–(b) (emphasis added).

13   Therefore, this statute plainly does not discriminate against private immigration detention

14   facilities in violation of the Supremacy Clause.

15   Critically, GEO fails to identify *any* federal law prohibiting state legislatures from

16   imposing generally applicable safety and health laws like RCW 49.17.070 on private

17   immigration detention facilities.[12] GEO similarly fails to identify any federal law

18   authorizing ICE and, in turn, GEO from denying L&I access to the NWIPC so that the

19   agency may inspect workplace conditions at the facility pursuant to both RCW 49.17.070

20   _____

21   [12] To the extent GEO suggests that RCW 49.17.070 is preempted in any manner by the
     PBNDS, the Court already rejected a similar argument in *Inslee*. Because the PBNDS is a mere
     agency publication, not a federal law, it cannot serve as a basis for a preemption defense. *Inslee*,

22   ___ F. Supp. 3d ___, 2024 WL 1012888, at *21–22.

ORDER - 22

*and* a state court search warrant. Therefore, by denying L&I access to the NWIPC under these circumstances, neither ICE nor GEO acted with "authority . . . validly conferred" by "*Congress*." *Yearsley*, 309 U.S. at 20 (emphasis added); *accord Pollack*, 703 F.3d at 120 ("'[S]uits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity." (quoting *Larson*, 337 U.S. at 689, 693)). GEO is accordingly not immune from L&I's claim under RCW 49.17.070.

GEO misleadingly suggests that it played no role in denying L&I access to the NWIPC and that only ICE did so. *See* Dkt. 38 at 6, 8, 10, 13, 16–17, 23 n.9. Based on this suggestion, GEO contends that, "[i]f Plaintiff wants . . . access to the NWIPC as it claims, it needs to seek that relief not from GEO, but from the entity that actually controls access to the Facility." Dkt. 31 at 6.

These are the undisputed facts. On December 29, 2023, two L&I officials visited the NWIPC and served the search warrant on GEO's assistant facility administrator, Knight, and demanded access to the facility so that they could inspect it for workplace hazards. Dkt. 27-2, ¶ 5 Dkt. 3, ¶ 3. The warrant explicitly directed *GEO* to provide L&I access to the NWIPC. Dkt. 27-6 at 3. Knight left the front lobby area to meet with several ICE officials and, together, they reviewed the warrant. Dkt. 3, ¶¶ 5, 6. Knight testified that these ICE officials "directed *GEO* to deny access to L&I for the requested inspection." *Id.* ¶ 6 (emphasis added). Knight, accompanied by ICE officer Jennings, returned to the front lobby area and Jennings informed the L&I officials that "ICE is denying entry into the facility." *Id.* ¶ 7; 27-2, ¶ 5. Under these circumstances, ICE

1  undisputedly directed *GEO* to deny L&I access to the NWIPC. Knight testified as much.

2  It is of no consequence that Jennings, not Knight, was the person who expressly informed

3  the L&I officials of this decision.

4        The record also does not support GEO's assertion that "ICE exercises exclusive

5  control over all access to secure portions of the NWIPC." Dkt. 28 at 13. In support of this

6  assertion, GEO quotes the following portion of its contract with ICE: "'ICE will exercise

7  full control over granting, denying, withholding or terminating unescorted government

8  facility and/or sensitive Government information access . . . based upon the results of a

9  background investigation.'" *Id.* (quoting Dkt. 39-2 at 70).

10        However, as L&I asserts, "GEO flatly misrepresents its contract with ICE"

11  because "the omitted language, hidden in GEO's response by an ellipsis, makes clear that

12  this language only applies to *GEO employees* who might need access to ICE's

13  administrative offices within the facility." Dkt. 42 at 7. The unedited quoted provision

14  states:

15  **IV. BACKGROUND AND CLEARANCE PROCEDURES**

16  SECURITY REQUIREMENTS
    REQUIRED SECURITY LANGUAGE FOR
17  SENTIVE /BUT UNCLASSIFIED {SBU} CONTRACTS

18  The United States Immigration and Customs Enforcement (ICE) has
    determined that performance of the tasks as described in Contract *TBD at*
19  *award* requires that the Contractor, subcontractor(s), vendor(s), etc. (herein
    known as Contractor) have access to sensitive DHS information, and that
20  the Contractor will adhere to the following.

21  **A. PRELIMINARY DETERMINATION**
    ICE will exercise full control over granting; denying, withholding or
22  terminating unescorted government facility and/or sensitive Government

1    information access for *Contractor employees*, based upon the results of a
2    background investigation.

Dkt. 39-2 at 70 (last emphasis added).

3        This provision plainly applies to only GEO's employees or employees of any
4
5    subcontractors, vendors, and the like. It does *not* apply to state agencies like L&I that are
6    lawfully entitled to inspect the NWIPC pursuant to both a generally applicable state
7    safety and health law and a search warrant.[13] Furthermore, GEO—not ICE—is the
8    "employer" subject to inspections under RCW 49.17.070. The Court thus rejects GEO's
9    contentions that ICE exclusively controls access the NWIPC and that L&I improperly
10   sued GEO instead of ICE.

11       In sum, the contract between GEO and ICE plainly requires GEO to comply with
12
13   generally applicable safety and health laws like RCW 49.17.070. And regardless of this
14   contract, L&I is entitled to inspect the NWIPC under RCW 49.17.070 absent any federal
15   law prohibiting state legislatures from imposing such generally applicable laws on private
16   immigration detention facilities. *See Yearsley*, 309 U.S. at 20; *Pollack*, 703 F.3d at 120.

         Having concluded that GEO wrongly denied L&I access to the NWIPC when the
17
18   agency sought to inspect the facility under RCW 49.17.070, the Court is satisfied that
19   L&I establishes the remaining factors necessary for a preliminary injunction. L&I
20   establishes a likelihood of irreparable harm in the absence of such relief and that an

21       _____
         [13] L&I also persuasively argues that the quoted provision, along with others in the
22   contract, "restrict[] GEO employee's and detainee's access to [only] ICE offices within the
     NWIPC," "not the NWIPC itself." Dkt. 42 at 8.

1   injunction is in the public interest because, as L&I asserts, "GEO is unilaterally blocking

2   the State's ability to enforce its own laws designed to protect workers." Dkt. 23 at 20.

3       L&I's statutory duty to ensure that workplace conditions at the NWIPC are safe is

4   plainly in the public interest. And GEO's act of denying the agency access to the facility

5   to inspect such conditions has already caused irreparable harm to the State. Indeed, GEO

6   denied L&I access to the NWIPC despite the agency's clear statutory authority to

7   conduct such inspections under RCW 49.17.070 *and* a state court warrant compelling

8   GEO to provide L&I access to the NWIPC under this statute. GEO has therefore inflicted

9   significant harm on the State by disobeying the lawful authority of its legislative,

10  executive, and judicial branches. The Court will not impair the State's inherent and broad

11  power to promote public health, safety, and welfare.

12      L&I's motion to preliminarily enjoin GEO from denying it access to the NWIPC

13  so that the agency may inspect the facility under RCW 49.17.070 is **GRANTED**.

## III.  ORDER

15      Therefore, it is hereby **ORDERED** that L&I's motion to remand, Dkt. 10, and

16  motion to consolidate, Dkt. 18, are **DENIED**. L&I's motion for a preliminary injunction,

17  Dkt. 23, is **GRANTED in part** and **DENIED in part**. The motion is granted insofar as

18  L&I seeks an order preliminarily enjoining GEO from denying it access to the NWIPC so

19  that the agency may inspect the facility under RCW 49.17.070. GEO is preliminarily

20  enjoined from denying L&I such access to the NWIPC. The motion is denied insofar as

21  L&I seeks an order preliminarily enjoining GEO from denying it access to the NWIPC so

22  that the agency may inspect the facility under HB 1470 § 3.

The Court encourages the parties to consult and agree on a resolution to this case in light of this order.

Dated this 1st day of July, 2024.

BENJAMIN H. SETTLE
United States District Judge

# Exhibit B

1

2

3

4

5

6

               UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
                     AT TACOMA

7

8

STATE OF WASHINGTON
DEPARTMENT OF HEALTH,

CASE NO. C24-5029 BHS

ORDER

9

                Plaintiff,

10

    v.

11

THE GEO GROUP, INC.,

12

                Defendant.

13

14

      This matter is before the Court on the State of Washington Department of Health

15

(DOH)'s motions to remand this matter to the Thurston County Superior Court, Dkt. 10;

16

to consolidate this matter with *Dep't of Labor and Indus. v. GEO Secure Serv., LLC*, No.

17

C24-5095 BHS, Dkt. 16; and to preliminary enjoin the GEO Group, Inc., from denying

18

the agency access to inspect the Northwest ICE[1] Processing Center (the NWIPC)—the

19

sole immigration detention facility in Washington which GEO operates pursuant to a

20

contract with ICE. Dkt. 24. DOH seeks such an injunction pursuant to both HB 1470 § 3[2]

21

22

     [1] Immigration and Customs Enforcement.

     [2] HB 1470 § 3 is codified as RCW 70.395.050.

(a law requiring DOH to inspect "private detention facilities" for conditions related to food service and handling, sanitation, hygiene, and nutrition) and RCW 43.70.170 (a statute authorizing DOH to inspect any place containing a condition constituting a threat to the public health).

GEO removed the action to this Court under the "federal officer" removal statute, 28 U.S.C. §1442(a)(1). This statute generally provides that any person acting under an officer or agency of the United States may remove an action to federal court when that person can assert a "colorable federal defense." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

GEO asserts a colorable federal defense to DOH's efforts to inspect the NWIPC under HB 1470 § 3. In a recent order in a related case, this Court ruled that HB 1470 § 3 is unconstitutional as applied to GEO as the operator of the NWIPC. *See The GEO Group, Inc. v. Inslee*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at *24–26 (W.D. Wash. Mar. 8, 2024). The Court explained that HB 1470 "was designed to apply to only the NWIPC and any other private immigration detention facility that may eventually exist in Washington" and that "§ 3 discriminates against [GEO] in violation of the intergovernmental immunity doctrine." *Id.* at *16, 26. The Court preliminarily enjoined the State and its agencies, including DOH, from enforcing HB 1470 § 3 against GEO. *Id.* at *30. DOH's motion to remand is accordingly denied.

The Court also declines to consolidate this case with *Dep't of Labor and Indus.*, No. C24-5095 BHS. Because DOH is not entitled to inspect the NWIPC under HB 1470 § 3, the primary remaining issue in this case is whether it is entitled to do so under RCW

43.70.170. This statute authorizes DOH to inspect any condition constituting a threat to

the public health. By contrast, the primary issue in *Dep't of Labor and Indus.*, No. C24-

5095 BHS, is whether the Department of Labor & Industries (L&I) is entitled to inspect

the NWIPC under an entirely different statute, RCW 49.17.070. That statute authorizes

L&I to conduct reasonable inspections of any workplace under certain circumstances.

These cases concern different statutes and, in turn, involve different questions of law and

fact. The motion to consolidate is denied.

Nor will the Court issue a preliminary injunction in this case. To the extent DOH

seeks an injunction under HB 1470 § 3, such relief is plainly foreclosed by the Court's

order declaring that law to be unconstitutional as applied to GEO. *See Inslee*, ___ F.

Supp. 3d ___, 2024 WL 1012888, at *24–26. To the extent DOH seeks an injunction

pursuant to RCW 43.70.170, it lacks constitutional standing. Before filing this lawsuit,

DOH *never* attempted to inspect the NWIPC pursuant to this statute. The Court must

therefore speculate as to whether GEO would have denied DOH access to the NWIPC

had the agency cited and explained the suspected conditions that constitute "a threat to

the public health," as that phrase is used in the statute. Under these circumstances, DOH

fails to establish an injury in fact or that its asserted injury is fairly traceable to GEO's

conduct. DOH's claim under RCW 43.70.170 is accordingly dismissed without prejudice

and without leave to amend, and the motion for a preliminary injunction is denied.

## I.  BACKGROUND

In 2023, the Washington legislature enacted HB 1470, which amended chapter

70.395 RCW to impose numerous requirements on "private detention facilities."

Following the passage of this law, GEO sued Washington's governor, Jay Inslee, and

attorney general, Robert Ferguson, in a different case before this Court, seeking to enjoin

the enforcement of HB 1470 against it as the operator of the NWIPC. *See* Dkt. 1 in

*Inslee*, No. C23-5626 BHS. GEO claimed, among other things, that HB 1470 is

unconstitutional as applied to it because the law impermissibly discriminates against it in

violation of the Supremacy Clause's intergovernmental immunity doctrine. *Id.* ¶¶ 74–83.

Between April 2023 and December 2023, DOH received 277 complaints from

detainees at the NWIPC. Dkt. 12, ¶ 6. These complaints were "generally about lack of

attention to medical needs, contaminated food, insufficient food, dirty cloths and

bedding, mistreatment of detainees, and hunger strikes." *Id.*

Some of these complaints asserted that various medical conditions suffered by

detainees, such as "stroke, paralysis, heart conditions, internal bleeding, and asthma,"

have not been "addressed by GEO." Dkt. 12, ¶ 7. For example, "[o]ne detainee asked to

be taken to the hospital but was refused," and "[a]nother broke their arm and was given

only Ibuprofen for the pain and it took several days before the arm was placed in a cast."

*Id.*

Detainees have also "complained that the food provided to them has contained

foreign objects including burned plastic, metal string, rope and splinters" and that the

"food is of low-quality and is typically soy-based meat substitutes made into tacos or

served over pasta." Dkt. 12, ¶ 8. One detainee with a "medically-prescribed diet to

include fruits and vegetables was refused such a diet." *Id.* Detainees have complained

that "the food tastes bad, smells bad, makes their stomach hurt, and they do not receive enough to eat." *Id.*

Detainees have further complained that that "their clothing, sheets, and blankets are rarely changed or laundered, and when laundered, are returned wet and dirtier than before." Dkt. 12, ¶ 9. They have also reported that "the facility is unsanitary; bathrooms are rarely cleaned, the toilets are often blocked, floors go upswept, and the facility smells like a dirty bathroom." *Id.* ¶ 10.

In response to such complaints, DOH officials attempted to inspect the NWIPC on two separate occasions. First, on November 14, 2023, two DOH officials, Miko Nanto and Amanda Soleil Maria Muñiz, visited the facility and Nanto informed the NWIPC's facility administrator, Bruce Scott, that they "were at the facility due to the passing of HB 1470 that allows DOH to conduct investigations and inspections regarding health and safety complaints." Dkt. 12, ¶ 14; *see also* Dkt. 19. Scott informed Nanto and Muñiz that, "due to active litigation," they were "not allowed to enter." Dkt. 12, ¶ 14. At this time, GEO had already filed its motion for a preliminary injunction in *Inslee*, No. C23-5626 BHS, and the Court had not yet entered its March 2024 order declaring HB 1470 § 3 to be unconstitutional as applied to GEO. Nanto asked Scott if he was refusing entry, and Scott "agreed." Dkt. 12, ¶ 14. Nanto and Muñiz then left.

At no point during this visit did Nanto or Muñiz request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 13, 14.

Next, on November 27, 2023, Nanto, Muñiz, and another DOH official, Lauren Jenks, visited the NWIPC and Nanto informed the guard that they were "with" DOH and "were there to investigate complaints." Dkt. 12, ¶ 15. They asked to speak to Scott, who subsequently arrived and "asked what [their] visit was regarding." *Id.* Nanto responded that they were there "to investigate complaints" concerning "laundry services and health care." *Id.* Scott expressed that "they were not used to DOH coming to their facility," and Muñiz "talked a little about the passing of HB 1470." *Id.* Scott expressed that "these types of inspections hadn't happened in previous years," and Muñiz explained that "HB 1470 was just recently passed." *Id.* Scott went "upstairs to speak with ICE representatives" and, upon his return, he denied the DOH officials access to the facility "due to the ongoing litigation." *Id.* ¶ 16.

At no point during this visit did Nanto, Muñiz, or Jenks request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 15, 16.

DOH sued GEO in Thurston County Superior Court, asserting that GEO "has twice refused the Department from entering the NWIPC, as it is required to do under RCW 70.395 [HB 1470]." Dkt. 1-2, ¶ 5.3. Despite never seeking to inspect any suspected threats to the public health during those two prior visits, DOH also asserts the agency "has authority to investigate public health threats and to enter buildings to do so. RCW 43.70.170." *Id.* ¶ 2.2. DOH contends that, "[b]ecause of the actions of GEO Group, the Department is unable to carry out its statutory obligations under RCW 70.395 [HB 1470]

and RCW 43.70.170." *Id.* ¶ 5.7. DOH seeks to enjoin GEO from denying it access to the NWIPC to conduct inspections pursuant to these laws. *Id.* ¶ 6.1.

After DOH filed its complaint, its officials returned to the NWIPC on three more occasions. On December 21, 2023, Nanto and Muñiz returned to the NWIPC "for informational purposes" only and were "not trying to enter the facility." Dkt. 12, ¶ 18. They provided Scott "information on how to get involved with [DOH's] current rulemaking[3] and let him know that both GEO and ICE could be as involved as they would like." *Id.* Nanto also informed Scott that DOH received a complaint from a detainee who was deaf and claiming violations of the Americans with Disabilities Act. *Id.* Nanto explained that DOH forwarded this complaint to both the Office of the Immigration Detention Ombudsman and the U.S. Department of Health and Human Services' Office of Civil Rights. *Id.* Nanto and Muñiz finally explained that DOH received complaints regarding "the women's pods not being able to receive clean undergarments and allegations they were unclean or used." *Id.* Nanto and Muñiz then left. *Id.*

At no point during this visit did Nanto or Muñiz request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 17–19.

---

[3] Presumably, the referenced rulemaking process concerned rules adopted pursuant to HB 1470, which requires DOH to "adopt rules . . . to ensure private detention facilities allow regular inspections and comply with measurable standards providing sanitary, hygienic, and safe conditions for detained persons." RCW 70.395.050(3); *see also* RCW 70.395.040 (detailing numerous standards that DOH must impose on private detention facilities under such rules).

On January 16, 2024, Muñiz and another DOH official, Kaye Eckmann, visited the NWIPC and spoke to Scott and another GEO employee. Dkt. 12, ¶¶ 20–22. Muñiz informed them that DOH received "complaints about the windows being painted over and not allowing natural light into the area where detainees are held." *Id.* ¶ 23. Muñiz and Eckmann then left. *Id.* ¶ 24.

At no point during this visit did Muñiz or Eckmann request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 12, ¶¶ 20–24.

On February 28, 2024, Muñiz and Eckmann returned to the NWIPC and spoke to Scott and "Mr. Santiago," the supervisor of the facility. Dkt. 42, ¶¶ 6–8; Dkt. 43, ¶¶ 5–13. Eckmann informed them that DOH received complaints that "[t]he bathrooms and showers were dirty and there were fungal infections on detainees' feet," "[t]he food was, at times, being served late and sometimes several hours late," and "[t]he HVAC[4] system/heating system was possibly malfunctioning and that it was cold at night, and detainees were asking for additional blankets because they were cold." Dkt. 43, ¶ 11. Eckmann informed Scott and Santiago that she "just wanted to be transparent with them." Dkt. 42, ¶ 8. Muñiz and Eckmann then left. Dkt. 42, ¶ 8; Dkt. 43, ¶ 13.

At no point during this visit did Muñiz or Eckmann request access to the NWIPC under RCW 43.70.170 to investigate suspected conditions constituting a threat to the public health. *See* Dkt. 42, ¶¶ 6–8; Dkt. 43, ¶¶ 5–13.

---

[4] Heating, ventilation, and air conditioning.

1    GEO removed the case to this Court under the "federal officer" removal statute, 28

2    U.S.C. §1442(a)(1). Dkt. 1. GEO asserts that it is entitled to remove the case pursuant to

3    this statute because it has "colorable federal defenses to Plaintiff's claims," including that

4    HB 1470 § 3 impermissibly discriminates against it in violation of the Supremacy

5    Clause's intergovernmental immunity doctrine. *Id.*, ¶ 18, 29–31.

6    DOH moves to remand this matter to the Thurston County Superior Court, arguing

7    that the federal officer removal statute does not apply because GEO is unable to assert a

8    colorable federal defense. Dkt. 10 at 1–2. DOH also moves to consolidate this matter

9    with *Dep't of Labor and Indus.*, No. C24-5095 BHS. Dkt. 16. In that case, L&I seeks to

10   enjoin GEO from denying it access to the NWIPC so that L&I may inspect the facility

11   under both HB 1470 § 3 (which also requires L&I to inspect workplace conditions at

12   private detention facilities) and RCW 49.17.070 (which authorizes L&I to inspect

13   conditions at workplaces generally). Dkt. 1-3 ¶¶ 21, 30, in No. C24-5095 BHS. DOH

14   finally moves to preliminarily enjoin GEO from denying it access to the NWIPC to

15   conduct inspections under both HB 1470 § 3 and RCW 43.70.170, arguing that these

16   laws plainly require GEO to provide the agency such access. Dkt. 24 at 3.

17   After DOH filed these motions, the Court entered its order in *Inslee* declaring HB

18   1470 § 3 to be unconstitutional as applied to GEO as the operator of the NWIPC. ___ F.

19   Supp. 3d. ___, 2024 WL 1012888, at *24–26. The Court ruled that this law

20   impermissibly discriminates against GEO in violation of the Supremacy Clause's

21   intergovernmental immunity doctrine. *Id.* The Court preliminarily enjoined "[t]he State

22

1    and its agencies" from enforcing HB 1470 § 3 against GEO as the operator of the

2    NWIPC. *Id.* at *30.

3        That order materially affects the merits of DOH's motions.

## II.   DISCUSSION

4

5    **A.    DOH's motion to remand is denied because GEO asserts a colorable federal defense.**

6        DOH contends that, to remove this case under 28 U.S.C. § 1442(a)(1), GEO must

7    assert a "colorable federal defense" justifying its act of denying DOH access to the

8    NWIPC and that GEO is unable to assert such a defense. Dkt. 10 at 1. DOH does not

9    dispute that GEO satisfies the remaining requirements of this statute. *See generally id.*

10       GEO responds that its notice of removal asserts numerous colorable federal

11   defenses, one of which is that HB 1470 § 3 impermissibly discriminates against it in

12   violation of the Supremacy Clause's intergovernmental immunity doctrine. Dkt. 17 at

13   23–24.

14       The federal officer removal statute allows persons acting under a federal officer or

15   agency to remove an action to federal court when the action relates to any act performed

16   under color of federal office:

17       (a) A civil action or criminal prosecution that is commenced in a State
         court and that is against or directed to any of the following may be removed
18       by them to the district court of the United States for the district and division
         embracing the place wherein it is pending:
19           (1) The United States or any agency thereof or any officer (or any
             person acting under that officer) of the United States or of any
20           agency thereof, in an official or individual capacity, for or relating to
             any act under color of such office or on account of any right, title or
21           authority claimed under any Act of Congress for the apprehension or
             punishment of criminals or the collection of the revenue.
22

28 U.S.C. § 1442(a)(1).

"The purpose of the federal officer removal statute is 'to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties.'" *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). "The right of removal is 'absolute for conduct performed under color of federal office,' and the 'policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted) (quoting *Manypenny*, 451 U.S. at 242).

A party seeking removal under § 1442(a)(1) "bears the burden of showing that (a) it is a 'person'[5] within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

When an action is properly removed under § 1442(a), the district court has "the power to hear claims that would not be independently removable." *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1975). Indeed, if "some of the [plaintiffs'] allegations . . . do not relate to the [defendants'] acts under color of federal office, 'removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only

---

[5] "[C]orporations are 'person[s]' under § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244.

1    apply to one claim to remove the case.'" *Baker v. Atlantic Richfield Co.*, 962 F.3d 937,

2    945 (7th Cir. 2020) (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir.

3    2017)).

4        DOH does not dispute that GEO satisfies the first two requirements for removal

5    under §1442(a)(1). It instead argues that GEO is unable to assert a colorable federal

6    defense. The Court disagrees. One of the defenses asserted in GEO's notice of removal is

7    that HB 1470 § 3 impermissibly discriminates against GEO in violation of the

8    intergovernmental immunity doctrine. Dkt. 1, ¶¶ 29–31. Under this Court's order in

9    *Inslee*, this defense is not only colorable, but valid. *See* ___ F. Supp. 3d ___, 2024 WL

10   1012888, at *24–26. For this reason alone, DOH's motion to remand is **DENIED**.

11   **B.    DOH's motion to consolidate is denied because this matter is not sufficiently
     similar to *Dep't of Labor and Indus.*, No. C24-5095 BHS.**

12       DOH moves to consolidate this matter with *Dep't of Labor and Indus.*, No. C24-

13   5095 BHS, asserting that these two cases are "very similar" because they "involv[e] two

14   state agencies, the same Defendant, the same facility, roughly the same time frame, and

15   nearly identical legal arguments." Dkt. 16 at 2. GEO responds that, considering this

16   Court's order in *Inslee*, the issues in these cases are not sufficiently similar to warrant

17   consolidation. Dkt. 35 at 5. GEO contends that the primary issue in this case is whether

18   DOH is entitled to inspect the NWIPC for any "threat to the public health" under RCW

19   43.70.170, whereas the primary issue in *Dep't of Labor and Indus.*, No. C24-5095 BHS,

20   is whether L&I is entitled to inspect the NWIPC for workplace hazards under RCW

21   49.17.070. *Id.* at 9.

22

1         "If actions before the court involve a common question of law or fact, the court

2 may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). "District courts enjoy

3 substantial discretion in deciding whether and to what extent to consolidate cases." *Hall*

4 *v. Hall*, 584 U.S. 59, 77 (2018). "To determine whether to consolidate, a court weighs the

5 interest of judicial convenience against the potential for delay, confusion and prejudice

6 caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp.

7 805, 807 (N.D. Cal. 1989).

8         Judicial convenience is not served by consolidating these two cases. The only

9 similar claims in these cases are DOH's and L&I's claims that they are each entitled to

10 inspect the NWIPC under HB 1470 § 3. These claims are easily resolvable considering

11 the Court's order declaring HB 1470 § 3 to be unconstitutional as applied to GEO as the

12 operator of the NWIPC. *See Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26.

13         The remaining claims in these cases are not similar. DOH seeks to inspect the

14 NWIPC pursuant to a statute authorizing it to inspect "any . . . place" containing "any

15 article or condition constituting a threat to the public health including, but not limited to,

16 outbreaks of communicable diseases, food poisoning, contaminated water supplies, and

17 all other matters injurious to the public health." RCW 43.70.170. L&I seeks to inspect the

18 NWIPC pursuant to an entirely different statute authorizing it to inspect "any . . .

19 workplace" "in carrying out [its] duties under" the Washington Industrial Safety and

20 Health Act (WISHA). RCW 49.17.070(1)(a)–(b). These cases accordingly present

21 different legal issues.

22

1   DOH and L&I also attempted to inspect the NWIPC at different times and under

2   different circumstances. DOH attempted to inspect the NWIPC on two occasions in

3   November 2023. Dkt. 12, ¶¶ 13–16. During these visits, DOH sought to inspect the

4   facility pursuant to *only* HB 1470 § 3. *Id.* It did *not* attempt to inspect the facility under

5   RCW 43.70.170. *See id.* By contrast, L&I attempted to inspect the NWIPC on two

6   occasions in December 2023. Dkt. 27-2, ¶ 4; Dkt. 27-5 at 4, in No. C24-5095 BHS.

7   During its second visit to the NWIPC, L&I attempted to inspect the facility pursuant to a

8   state court search warrant, which expressly stated that L&I was authorized to inspect the

9   NWIPC under HB 1470 *and* WISHA, chapter 49.17 RCW.[6] *See* Dkt. 27-6 at 3, in No.

10  C24-5095 BHS.

11       Because DOH never attempted to inspect the NWIPC under RCW 43.70.170, an

12  issue exists as to whether it has constitutional standing to seek an injunction pursuant to

13  this statute. L&I does not face a similar problem.

14       These actions accordingly do not involve sufficiently common issues of law or

15  fact to warrant consolidation. DOH's motion to consolidate, Dkt. 16, is **DENIED**.

16  **C.    DOH's motion for a preliminary injunction is denied in part on the merits
          and denied in part as moot for lack of constitutional standing.**

17

18       DOH moves to preliminarily enjoin GEO from denying it access to inspect the

19  NWIPC pursuant to both HB 1470 § 3 and RCW 43.70.170, arguing that these laws

20  plainly require GEO to provide the agency such access. Dkt. 24 at 3, 8–9, 12.

21  _____

22       [6] The warrant also stated that L&I was entitled to inspect the NWIPC under Title 296
     WAC. Dkt. 27-6 at 3, in No. C24-5095 BHS.

1    GEO responds that, considering this Court's order in *Inslee*, DOH "has no chance

2    of succeeding on the merits because its attempts to enter, inspect, and enforce HB 1470

3    are unconstitutional under the doctrine of Intergovernmental Immunity due to

4    impermissible discrimination." Dkt. 37 at 19. GEO also contends that DOH never

5    attempted to inspect the NWIPC under RCW 43.70.170 and argues that, under these

6    circumstances, DOH's entitlement to do so presents "a purely hypothetical question,

7    raising an issue that is not prudentially ripe." Dkt. 37 at 6–7.

8    DOH's reply acknowledges this Court's order enjoining it from enforcing HB

9    1470 § 3 against GEO, but asserts that the order was wrongly decided: "Although the

10   Court partially enjoined HB 1470, DOH & L&I do not concede that HB 1470 is

11   unconstitutional." Dkt. 41 at 3 n.3. It also maintains that its "general authority under

12   RCW 43.70.170 . . . is sufficient to obtain the injunctive relief sought here." *Id.*

13   To obtain preliminary injunctive relief, a plaintiff must establish (1) a likelihood

14   of success on the merits, (2) a likelihood of irreparable harm in the absence of such relief,

15   (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the

16   public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Where

17   the government is a party to a case in which a preliminary injunction is sought, the

18   balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935,

19   941 (9th Cir. 2020).

20   DOH's claim seeking an injunction under HB 1470 § 3 is plainly foreclosed by

21   this Court's order in *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26, 30. That

22   order declared HB 1470 § 3 to be unconstitutional as applied to GEO, and preliminarily

ORDER - 15

1    enjoined "[t]he State and its agencies" from enforcing HB 1470 § 3 against it. *Id.* at *30.

2    To the extent DOH seeks a preliminary injunction allowing it to inspect the NWIPC

3    under HB 1470 § 3, its motion is **DENIED**.

4    DOH also lacks constitutional standing to seek an injunction under RCW

5    43.70.170. *See B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999)

6    ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as

7    standing.").[7] Article III of the Constitution confines "[t]he judicial Power of the United

8    States" to "Cases" and "Controversies." U.S. CONST. art. III, §§ 1, 2. "Standing to sue is a

9    doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v.*

10   *Robins*, 578 U.S. 330, 338 (2016).

11   "[T]he 'irreducible constitutional minimum' of standing consists of three

12   elements." *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

13   555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly

14   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

15   by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. An injury in fact is "an

16   invasion of a legally protected interest which is" "concrete and particularized" and

17   "'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560–61

18   (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155

19   (1990)).

20

21

22      [7] Although GEO raises this issue in the context of prudential ripeness, *see* Dkt. 37 at 6–7, it is more-appropriately examined in the context of constitutional standing.

1   DOH fails to establish an injury in fact. The agency has *never* attempted to inspect

2   the NWIPC pursuant to RCW 43.70.170. *See* Dkt. 12, ¶¶ 13–24; Dkt. 42, ¶¶ 6–8; Dkt. 43,

3   ¶¶ 5–13. Rather, each of the two times it attempted to inspect the NWIPC before filing

4   this lawsuit, it sought to do so pursuant to *only* HB 1470 § 3. Dkt. 12, ¶¶ 13–16. GEO

5   denied DOH access on that basis alone, stating that the agency was not allowed to enter

6   the facility because of the "active" and "ongoing" litigation in *Inslee*, No. C23-5626

7   BHS. *Id.* ¶¶ 14, 16. That case concerns GEO's challenges to the validity of only HB

8   1470: it does not concern whether DOH is entitled to inspect the NWIPC under RCW

9   43.70.170.

10   Even after DOH filed its complaint in this case, expressing—for the first time—its

11   belief that it is also entitled to inspect the NWIPC under RCW 43.70.170, DOH officials

12   returned to the NWIPC on *three* occasions and, again, they did *not* request to inspect the

13   facility under this statute. *See* Dkt. 12, ¶¶ 18, 22–23; Dkt. 42, ¶¶ 6–8; Dkt. 43, ¶¶ 5–13.

14   Given DOH's failure to do so, it unsurprisingly never expressed to GEO its apparent

15   belief that the suspected conditions at the NWIPC constitute threats to the public health,

16   as that term is used in the statute.

17   DOH's claim is based purely on conjecture: because GEO denied DOH access to

18   inspect the NWIPC under HB 1470 § 3, it would have also denied DOH access to inspect

19   the facility under RCW 43.70.170. *See Lujan*, 504 U.S. at 560 (Article III requires the

20   plaintiff to show that its asserted injury is "concrete and particularized" and "actual or

21   imminent, *not conjectural or hypothetical*" (emphasis added) (internal quotation marks

22   omitted) (quoting *Whitmore*, 495 U.S. at 155)).

But HB 1470 § 3 and RCW 43.70.170 are entirely different laws, addressing different types of harm and imposing different standards on the facilities subject to them. On the one hand, HB 1470 § 3 requires DOH to conduct "routine, unannounced inspections of private detention facilities, including, but not limited to, inspection of food service and food handling, sanitation and hygiene, and nutrition." RCW 70.395.050(1)(a). On the other hand, RCW 43.70.170 authorizes DOH to inspect "any . . . place" containing "any article or condition constituting a threat to the public health including, but not limited to, outbreaks of communicable diseases, food poisoning, contaminated water supplies, and all other matters injurious to the public health."

GEO persuasively asserts that DOH "has made no showing whatsoever that a statutory 'threat to public health' motivated its attempts to gain access to the NWIPC in November 2023." Dkt. 37 at 11 n.3. Even now, DOH fails to explain how, exactly, the suspected conditions at the NWIPC constitute a threat to the public health. *See generally* Dkts. 24, 41. DOH states that it has "received 277 complaints from detainees at NWIPC, detailing unsafe and unsanitary conditions," such as "food . . . contain[ing] burned plastic, metal string, rope, and splinters" and "clothing and blankets [being] rarely changed or laundered, and when laundered, [being] returned dirtier than before." Dkt. 24 at 9. In its reply, DOH asserts that it has also "received reports of suicide attempts and detainees with suicidal ideation." Dkt. 41 at 11.[8]

---

[8] GEO moves to strike two declarations that DOH filed in support of its reply brief. Dkt. 45. This motion is **DENIED**.

1   Although the reported conditions at the NWIPC may indeed pose a threat to the

2 health of individual detainees, it is not clear whether or how they constitute a "threat to

3 the *public* health," meaning "outbreaks of communicable diseases, food poisoning,

4 contaminated water supplies," and the like. RCW 43.70.170 (emphasis added); *see Green*

5 *v. Pierce County*, 197 Wn.2d 841, 853 (2021) (under traditional canons of construction,

6 "the meaning of a general word is construed consistent with the specific terms in the

7 statute" and a "word's meaning is determined by its relation to other words in the

8 statute"). However, because DOH never attempted to inspect the NWIPC pursuant to this

9 statute, the Court will not decide whether it applies to the suspected conditions at the

10 NWIPC. A state court would be better suited to interpret the language of this statute.

11   GEO argues: "Whether DOH might be entitled to some relief based on the version

12 of events proffered in its brief," namely, seeking to enter and inspect the NWIPC

13 pursuant to RCW 43.70.170, "is a purely hypothetical question." Dkt. 37 at 6–7. The

14 Court agrees. Under these circumstances, the Court is forced to speculate as to whether

15 GEO would have denied DOH access to the NWIPC had the agency cited and explained

16 the suspected conditions that constitute a threat to the *public* health under RCW

17 43.70.170. *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838–39 (9th Cir.

18 2014) ("Concrete legal issues require more than mere 'hypothetical threat[s]' and where

19 we can 'only speculate' as to the specific activities in which a party seeks to engage, we

20 must dismiss a claim as nonjusticiable." (quoting *United Pub. Workers of Am. (C.I.O.) v.*

21 *Mitchell*, 330 U.S. 75, 90 (1947))). DOH accordingly fails to establish an injury in fact.

22

1    DOH similarly fails to demonstrate that its asserted injury is "fairly traceable" to

2    *GEO's* conduct. *Spokeo*, 578 U.S. at 338. By never requesting to inspect the NWIPC

3    pursuant to RCW 43.70.170, DOH's asserted injury—not having had an opportunity to

4    conduct such an inspection—is traceable to only itself.

5    For these reasons, DOH lacks constitutional standing to seek an injunction

6    requiring GEO to provide it access to the NWIPC so that the agency may inspect the

7    facility under RCW 43.70.170. This claim is accordingly **DISMISSED without**

8    **prejudice** and **without leave to amend**.[9] DOH's motion for a preliminary injunction on

9    this basis is **DENIED as moot**.

### III.  ORDER

11   Therefore, it is hereby **ORDERED** that DOH's motion to remand, Dkt. 10, motion

12   to consolidate, Dkt. 16, and motion for a preliminary injunction, Dkt. 24, are **DENIED**.

13   Because DOH lacks constitutional standing to seek an injunction requiring GEO to

14

---

15      [9] The Court notes that, when a case is removed to federal district court and "it appears the
district court lacks subject matter jurisdiction, *the case* shall be remanded." 28 U.S.C. § 1447(c)

16   (emphasis added). The "ordinary reading of [this] language indicates that the statute refers to an
instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply
one claim within a case." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998); *accord*

17   *Kim v. Walmart, Inc.*, No. 2:22-CV-08380-SB-PVC, 2023 WL 196919, at *3 (C.D. Cal. Jan. 13,
2023) (Section 1447(c) "authorizes remand of a 'case,' not individual claims"). Because the

18   Court has subject matter jurisdiction over DOH's claim advanced pursuant to HB 1470 § 3, this
statute does not apply.

19      Nor may the Court sever and remand DOH's claim asserting a violation of RCW
43.70.170 under 28 U.S.C. § 1441(c), which authorizes severance and remand of individual

20   claims when a defendant removes an action containing "a *claim* arising under the Constitution,
laws, or treaties of the United States" and "a claim not within the original or supplemental
jurisdiction of the district court." (Emphasis added). Because DOH does not assert any claim

21   arising under federal law and GEO removed this matter based on a colorable federal *defense*
under the federal officer removal statute, § 1441(c) also does not apply.

22      Under these circumstances, the proper remedy is dismissal without prejudice.

1   provide the agency access to inspect the NWIPC under RCW 43.70.170, DOH's claim

2   seeking such an injunction is **DISMISSED without prejudice** and **without leave to**

3   **amend**.

4        The Court encourages the parties to consult and agree on a resolution to this case

5   in light of this order.

6        Dated this 1st day of July, 2024.

7

8

9           BENJAMIN H. SETTLE
           United States District Judge

ORDER - 21

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/30/2024 - 2:44PM
Linda Myhre Enlow
Thurston County Clerk

Hearing date:_ August 9, 2024
Hearing time:  9:00 am
Judge/Calendar:
Hon. Wilson / Civil

**STATE OF WASHINGTON**
**THURSTON COUNTY SUPERIOR COURT**

STATE OF WASHINGTON,
DEPARTMENT OF HEALTH,

               Plaintiff,

    v.

THE GEO GROUP, INC.,

               Defendant.

NO.  24-2-02712-34

DECLARATION OF AMANDA
SOLEIL MARIA MUÑIZ

I, AMANDA SOLEIL MARIA MUÑIZ, hereby declare the following:

1.     I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge. My legal name is AMANDA SOLEIL MARIA MUÑIZ but I go by Soleil in my work.

2.     I am the Complaint Response Unit Enforcement Lead for the State of Washington Department of Health (DOH or the Department), Office of the Assistant Secretary (OAS), which is part of DOH's Environmental Public Health Program, where I have worked since August 2023. I have a Master's Degree in International Policy Studies, Human Security and Development from the Middlebury Institute of International Studies at Monterey.

3.     I am the project manager that takes and investigates complaints or concerns from the public, including any persons detained in Washington State. I assist in planning and implementing the complaint resolution team, determining processes for complaints, assisting

DECLARATION OF AMANDA SOLEIL
MARIA MUÑIZ

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    with rulemaking, seeking out opportunities for collaboration, and carrying out investigations.

2        4.     I have received complaints from detainees at the Northwest ICE Processing Center.

3        5.     The complaint resolution team has received 722 complaints from detainees inside

4    the Northwest ICE Processing Center from April 2023 through July 2024. The complaints are

5    about the lack of attention to medical needs, contaminated food, insufficient food, dirty clothes

6    and bedding, brown water, and hunger strikes.

7        6.     Detainees have complained about lack of attention to medical needs. Medical

8    concerns reported include stroke, paralysis, heart conditions, internal bleeding, respiratory

9    sickness, aspergilloses and asthma; detainees say these complaints were unaddressed by GEO.

10   One detainee asked to be taken to the hospital, but was refused, another broke their arm and it

11   took several days before the arm was placed in a cast.

12       7.     Mental health conditions have also been neglected and left without treatment. A

13   detainee with mental health issues had soiled their clothing but was refused clean clothing by

14   one of the guards. In the past six months, there have been reports of a rash of suicide attempts,

15   showing that mental health concerns at the facility are going unaddressed.

16       8.     Detainees have complained that the food provided to them has contained foreign

17   objects including burned plastic, metal string, rope, and splinters. The food is of low-quality and

18   is typically soy-based meat substitutes. A detainee on a medically-prescribed diet to include

19   fruits and vegetables was refused such a diet. Detainees report the food tastes and smells spoiled,

20   makes their stomach hurt, and they do not receive enough to eat.

21       9.     Detainees have complained they are unable to care for basic personal hygiene

22   needs. Clothing, sheets, and blankets are rarely changed or laundered, and when returned, they

23   were not cleaned. Clothing is not replaced when worn out; detainees have one change of clothes,

24   and often that change of clothes has been previously worn by previous detainees and not washed

25   in between.

26

DECLARATION OF AMANDA SOLEIL     2     ATTORNEY GENERAL OF WASHINGTON
MARIA MUÑIZ     1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

10.     Detainees have complained the facility is unsanitary; bathrooms are rarely cleaned, the toilets are often blocked, floors go unswept, mold is visible, and the facility smells like a dirty bathroom.

11.     Lastly, detainees reported that the water is brown and possibly contaminated. As this water is detainees' only source for drinking, bathing, laundry and food preparation, the Department takes the prospect of water contamination very seriously.

12.     Due to the above-mentioned allegations of health and safety violations from the people detained there and the suicides reported, the Department became concerned that the conditions at the GEO facility presented an imminent threat to the health of detainees and employees, who are members of the public. And disease can pass to those outside the facility from visitors and guards. It therefore needed to investigate the facility under RCW 43.70.170.

13.     On July 18, 2024, I arrived at the front desk around 10:40 a.m. I identified myself as a Washington State Department of Health employee and requested access to inspect the facility.

14.     The front desk staff person then called management and the facility administrator, Mr. Bruce Scott, came down to speak to me. I let him know I was at the facility to conduct an inspection. He asked me to fill out a form that identified the authority under which I sought to inspect. I wrote down that I sought to inspect under RCW 43.70.170 given public health concerns related to water quality, air quality, COVID/disease infection, suicide/mental health, and living conditions/hygiene. Attached as Exhibit A is a true and accurate photograph of the completed the form.

15.     Mr. Scott said he had to speak with ICE and then left. Mr. Scott came back with two gentlemen, Mr. White and Mr. Knight, and told us that they were denying us access to the facility. They would allow the Department to take a water sample from the lobby where we were standing, but they would not let the Department inspect the rest of the facility. I thanked him, and the front desk, and promptly left the building. I left at approximately 11:30 a.m.

DECLARATION OF AMANDA SOLEIL
MARIA MUÑIZ                                  3                ATTORNEY GENERAL OF WASHINGTON
                                                              1125 Washington Street SE
                                                              PO Box 40100
                                                              Olympia, WA 98504-0100
                                                              (360) 753-6200

16. We have not been able to enter the facility to investigate the public health complaints we have received from detainees.

17. It is impossible for me to conduct thorough investigations if we are not allowed to enter. I am concerned for the health and safety of detainees as I believe there are public health threats actively occurring.

I declare under the penalty of perjury under the laws of the State of Washington that the foregoing it true and correct.

SIGNED this __25th___ day of July 2024, at Tumwater, Washington.

_____
SOLEIL MUÑIZ
Complaint Enforcement Lead
Washington State Department of Health

DECLARATION OF AMANDA SOLEIL
MARIA MUÑIZ

4

# Exhibit A

Northwest
ICE Processing Center

| Date/Time | Agency/Organization/ Individual representative(s) | Statutory/Regulatory Authority For Inspection | Purpose and Scope of Inspection (specify areas of Facility) | Facility Notes |
|---|---|---|---|---|
| 7/18/2024 | DOH | RCW 43.70.170 | Public Health Concern throughout Facility - water quality - air quality - Covid/Disease Infection - Suicide/Mental Health - Living conditions) Hygiene | Chem took photo of Form. |

1 | Hearing date: August 9, 2024
2 | Hearing time: 9:00 am
  | Judge/Calendar:
3 |     Hon. Wilson / Civil

4

5

6

7

8

9                          **STATE OF WASHINGTON**
                   **THURSTON COUNTY SUPERIOR COURT**
10

11 | STATE OF WASHINGTON,              NO. 24-2-02712-34
    | DEPARTMENT OF HEALTH,
12 |                                   DECLARATION OF SERVICE
    |                Plaintiff,

13 |     v.

14 | THE GEO GROUP, INC.,

15 |                Defendant.

16

17        I certify under penalty of perjury under the laws of the state of Washington that I caused

18 the documents referenced below to be served as follows:

19        DOCUMENTS:

20            Case Information Cover Sheet;

21            Summons;

22            Complaint for Injunctive Relief;

23            Notice of Assignment & Blank Scheduling Questionnaire;

24            Notice of Hearing;

25            Motion for Preliminary Injunction;

26            Declaration of Eric Arroyo;

DECLARATION OF SERVICE                    1            ATTORNEY GENERAL OF WASHINGTON
                                                              1125 Washington Street SE
                                                                    PO Box 40100
                                                               Olympia, WA 98504-0100
                                                                   (360) 753-6200

1    Declaration of Joe Wesley Barbee Jr.;

2    Declaration of Amanda Soliel Maria Muñiz;

3    Declaration of Marsha Chien; and

4    Proposed Order Granting Motion for Preliminary Injunctive Relief

5

6    COPY TO:   Harry Korrell, HarryKorrell@dwt.com          [X] Via Electronic Mail

7

8    DATED this 30th day of July 2024 at Seattle, Washington.

9                                            ROBERT W. FERGUSON
                                             Attorney General
10
                                             */s/ Marsha Chien*
11                                           MARSHA CHIEN, WSBA 47020
                                             CRISTINA SEPE, WSBA 53609
12                                           Deputy Solicitors General
                                             1125 Washington Street SE
13                                           PO Box 40100
                                             Olympia, WA 98504-0100
14                                           (360) 753-6200
                                             Marsha.Chien@atg.wa.gov
15                                           Cristina.Sepe@atg.wa.gov

16                                           ELLEN RANGE, WSBA 51334
                                             ANDREW HUGHES, WSBA 49515
17                                           Assistant Attorneys General
                                             Complex Litigation Division
18                                           800 Fifth Avenue, Suite 2000
                                             Seattle, WA 98104
19                                           (206) 464-7744
                                             Ellen.Range@atg.wa.gov
20                                           Andrew.Hughes@atg.wa.gov

21                                           LILIA LOPEZ, WSBA 22273
                                             Senior Counsel
22                                           Agriculture and Health Division
                                             1125 Washington Street SE
23                                           Olympia, WA 98504-0100
                                             (360) 586-6500
24                                           Lilia.Lopez@atg.wa.gov
                                             *Counsel for Department of Health*
25

26