1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE OF WASHINGTON,
DEPARTMENT OF HEALTH,

               Plaintiff,

    v.

THE GEO GROUP, INC.,

               Defendant.

CASE NO. C24-5639 BHS

ORDER

      This matter is before the Court on the parties' briefing, Dkts. 16, 17, addressing the Court's order to show cause why this case should not be remanded to the Thurston County Superior Court.

      The Department of Health (DOH) filed this action in Thurston County Superior Court, seeking to enjoin the GEO Group, Inc., from denying it access to the Northwest ICE[1] Processing Center (the NWIPC) so that the agency may conduct an inspection under RCW 43.70.170. This state statute authorizes DOH to inspect any place containing a condition constituting a threat to the public health.

---

[1] Immigration and Customs Enforcement.

GEO removed this case to this Court pursuant to the "federal officer" removal statute, 28 U.S.C. § 1442(a)(1).  This statute allows persons acting under a federal officer or agency to remove an action to federal court when the action relates to any act performed under color of federal office:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

"The purpose of the federal officer removal statute is 'to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties.'" *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). "The right of removal is 'absolute for conduct performed under color of federal office,' and the 'policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted) (quoting *Manypenny*, 451 U.S. at 242).

A party seeking removal under § 1442(a)(1) "bears the burden of showing that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it

ORDER - 2

1    can assert a 'colorable federal defense.'" *Goncalves ex rel. Goncalves v. Rady Children's*

2    *Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (internal quotation marks omitted)

3    (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)). The

4    issue is whether GEO asserts a "colorable" federal defense.

5         The notice of removal asserts five federal defenses that GEO argues are colorable:

6    (1) that it is entitled to "derivative sovereign immunity" against DOH's claim under

7    RCW 43.70.170, Dkt. 1, ¶¶ 25–27; (2) that DOH's attempt to inspect the NWIPC under

8    this statute directly regulates the federal government in violation of the intergovernmental

9    immunity doctrine, *id.* ¶¶ 28–29; (3) that DOH's attempt to inspect the NWIPC under this

10   statute impermissibly discriminates against GEO in violation of the intergovernmental

11   immunity doctrine, *id.* ¶¶ 30–33; (4) that this statute is field preempted by ICE's

12   Performance Based National Detention Standards (PBNDS), *id.* ¶¶ 34–36; and (5) that

13   this statute is conflict preempted, presumably also by the PBNDS. *Id.* ¶¶ 37–38.

14        After removal, DOH moved to preliminarily enjoin GEO from denying the agency

15   access to the NWIPC so that it may inspect the facility under RCW 43.70.170. Dkt. 7.

16   GEO moved to dismiss DOH's claim under Federal Rule of Civil Procedure 12(b)(7) for

17   failure to join ICE, which GEO asserts to be a required party under Fed. R. Civ. P. 19.

18   Dkt. 13.

19        The Court terminated those motions and ordered the parties to show cause why the

20   case should not be remanded to the Thurston County Superior Court. Dkts. 12, 15. The

21   Court explained that it was not persuaded that GEO asserted a colorable federal defense

22   because the Court had already rejected the bases underlying each of GEO's asserted

1    federal defenses in related cases and before DOH had even filed this lawsuit in Thurston

2    County Superior Court. Dkt. 12 at 2–5. The Court further explained that "[t]he sole issue

3    in this case appears to be whether any of the complained of conditions at the NWIPC

4    constitute a 'threat to the public health,' as that term is used in RCW 43.70.170" and that

5    this "is a state law issue, not a federal one." *Id.* at 5.

6           In response to the Court's order to show cause, GEO does not dispute that the

7    Court has already rejected the bases underlying each of the federal defenses that it asserts

8    in its notice of removal. It instead argues that those prior rulings were erroneous. Dkt. 16

9    at 14–20. GEO cites the standard set forth by the Ninth Circuit in *DeFiore v. SOC LLC*,

10   85 F.4th 546 (9th Cir. 2023), for determining whether a defense is "colorable" under 28

11   U.S.C. § 1442(a)(1). Dkt. 13–14. In *DeFiore*, the Ninth Circuit explained that "[t]o

12   determine whether a defense is colorable, we need not reinvent the jurisprudential wheel"

13   because "[a] long-standing body of law governs whether a *claim* is colorable for securing

14   federal question jurisdiction." 85 F.4th at 559–60. The Ninth Circuit held that the

15   appropriate test is "not whether the [removing party's] asserted federal defense [is]

16   meritorious, but whether that defense [is] 'immaterial and made solely for the purpose of

17   obtaining jurisdiction *or* . . . wholly insubstantial and frivolous.'" *Id.* at 560 (emphasis

18   added) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).

19          DOH's response does not discuss this specific standard, but argues that GEO's

20   asserted federal defenses are not colorable because the Court, before DOH even filed this

21   lawsuit in state court, had already rejected each of these defenses which GEO asserted in

22   related cases. *See generally* Dkt. 17.

The Court concludes that, under the unique circumstances of this case, GEO's asserted federal defenses are "'immaterial and made solely for the purpose of obtaining jurisdiction.'" *DeFiore*, 85 F.4th at 560 (quoting *Bell*, 327 U.S. at 682–83). Before GEO removed this action, the Court had already rejected the bases underlying each of GEO's asserted federal defenses in two related cases involving GEO. *See Dep't of Lab. & Indus. v. GEO Secure Servs., LLC*, No. C24-5095 BHS, 2024 WL 3250426, at *7–12 (W.D. Wash. July 1, 2024) (rejecting the bases underlying GEO's derivative sovereign immunity defense, discrimination in violation of the intergovernmental immunity doctrine defense, field preemption defense, and conflict preemption defense that GEO advanced in response to a state agency's efforts to enforce a generally-applicable state safety and health law); *GEO Grp., Inc. v. Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *18–22 (W.D. Wash. Mar. 8, 2024) (rejecting the bases underlying GEO's direct regulation intergovernmental immunity doctrine defense, field preemption defense, and conflict preemption defense).

The reasoning in those orders applies equally here. GEO contends that the Court erroneously rejected its derivative sovereign immunity defense in *Dep't of Lab. & Indus.*, 2024 WL 3250426, at *7–11, asserting that the Fourth Circuit's decision in *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640 (4th Cir. 2018), compels a different result. Dkt. 16 at 14–18. *Cunningham* is entirely consistent with this Court's prior ruling, and it does not render GEO's derivative sovereign immunity defense "colorable." The *Cunningham* court explained that, "'[u]nder *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the

1    government "validly conferred" that authorization,'" meaning that "*Congress* authorized

2    the government agency to perform a task and empowered the agency to delegate that task

3    to the contractor, provided it was within the power of *Congress* to grant the

4    authorization." 888 F.3d at 646 (emphasis added) (quoting *In re KBR, Inc., Burn Pit*

5    *Litig.*, 744 F.3d 326, 342 (4th Cir. 2014)). As in *Dep't of Lab. & Indus.*, GEO once again

6    fails to identify any Act of Congress that authorizes ICE and, in turn, GEO to perform the

7    "task" at issue, namely, denying a state agency—here, DOH—access to the NWIPC so

8    that the agency may inspect the facility pursuant to a generally-applicable state safety and

9    health law. *See* 2024 WL 3250426, at *11 ("GEO . . . fails to identify any federal law

10   authorizing ICE and, in turn, GEO from denying L&I access to the NWIPC so that the

11   agency may inspect workplace conditions at the facility pursuant to . . . RCW

12   49.17.070."). Because *Cunningham* merely lends further support to this Court's prior

13   ruling, it is immaterial to this dispute.

14         Concerning its asserted preemption defenses, GEO reiterates an argument that the

15   Court has *twice* rejected. It contends that the State of Washington's "application of state

16   health laws, including RCW 43.70.170," to it as the operator of the NWIPC is preempted

17   by ICE's PBNDS. Dkt. 16 at 19–20. GEO reiterates its belief that the PBNDS was

18   "implemented at the direction of Congress." Dkt. 16 at 20. As the Court has already

19   explained, "[b]ecause the PBNDS is a mere agency publication, not federal law, it cannot

20   serve as a basis for a preemption defense." *Dep't of Lab. & Indus.*, 2024 WL 3250426, at

21   *11 n.12 (citing *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *21–22)). The Court

22

1    will not revisit this argument for a third time, and GEO's reassertion of this twice-rejected

2    defense does not make it "colorable."

3        GEO's response to the Court's order to show cause fails to address its assertion in

4    its notice of removal that RCW 43.70.170 discriminates against it in violation of the

5    Supremacy Clause's intergovernmental immunity doctrine. *See generally* Dkt. 16. To the

6    extent GEO argues that this is a "colorable" federal defense, that argument is waived. In

7    any event, this statute is a generally applicable safety and health law that applies to "*any*

8    *. . . place*" in the State containing "any article or condition constituting a threat to the

9    public health." RCW 43.70.170 (emphasis added). By its plain terms, the statute does not

10   discriminate against GEO as a federal contractor. *See Inslee*, ___ F. Supp. 3d ___, 2024

11   WL 1012888, at *27 (a state law does not discriminate against a federal contractor in

12   violation of the intergovernmental immunity doctrine if it "'is imposed on some basis

13   unrelated to the object's status as a Government contractor," meaning "'*that it* [*is*]

14   *imposed equally on other similarly situated constituents of the State*" (quoting *North*

15   *Dakota v. United States*, 495 U.S. 423, 438 (1990) (plurality opinion)).

16       GEO asserts only one defense that is unique to the facts of this case. It argues that

17   "DOH's attempts to conduct investigations of allegations regarding the medical care

18   provided by *ICE* at the NWIPC" directly regulate the federal government in violation of

19   the Supremacy Clause's intergovernmental immunity doctrine. Dkt. 16 at 19 (emphasis

20   added). GEO contends that investigating ICE in this manner would "clearly 'involve a

21   direct, physical interference with federal activities' and place a 'direct, immediate burden

22

1    on the performance of the [federal] functions.'" *Id.* (quoting *Railway Mail Ass'n v. Corsi*,

2    326 U.S. 88, 96 (1945)).

3         Even if this were so, GEO is not entitled to assert this defense on ICE's behalf.[2] A

4    state law regulates the activities of the federal government directly in violation of the

5    intergovernmental immunity doctrine if it "'falls on the United States itself, or on an

6    agency or instrumentality so closely connected to the Government that the two cannot

7    realistically be viewed as separate entities, at least insofar as the activity being [regulated]

8    is concerned.'" *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *19 (quoting *United

9    States v. New Mexico*, 455 U.S. 720, 721 (1982)). Therefore, a federal contractor is

10   entitled to assert a direct-regulation defense only when it alleges that the regulation "falls

11   on" *the contractor's* activities and the contractor is "so closely connected to the

12   Government that the two cannot realistically be viewed as separate entities, at least

13   insofar as the activity being [regulated] is concerned." *New Mexico*, 455 U.S. at 721. If

14   the regulation applies to only *ICE's* activities, then only ICE could assert such a defense.

15   *See id.* Because GEO asserts that only ICE provides medical care to detainees at the

16   NWIPC, Dkt. 16 at 19, it is not entitled to assert this defense on ICE's behalf.

17        Notably, GEO's pending motion to dismiss, Dkt. 13, does not raise *any* of the

18   federal defenses that it asserts in its notice of removal; it argues only that this case should

19   be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join a party—ICE—under Rule

20   19. *See generally* Dkt. 13. This is not a federal defense. It is a procedural defense that

21   _____

22      [2] The Court expresses no opinion on the merits of such a defense if properly advanced by ICE.

1    GEO is entitled to advance in Thurston County Superior Court. *See* Washington State

2    Court Rules 12(b)(7), 19. By not raising in its motion to dismiss any of the federal

3    defenses that it depends on as a basis for removal, GEO effectively concedes that those

4    defenses are not material to this dispute and that it asserts them to simply obtain this

5    Court's jurisdiction. This is impermissible. *See DeFiore*, 85 F.4th at 560 (the appropriate

6    test is "not whether the [removing party's] asserted federal defense [is] meritorious, but

7    whether that defense [is] 'immaterial and made solely for the purpose of obtaining

8    jurisdiction *or* . . . wholly insubstantial and frivolous'" (emphasis added) (quoting *Bell*,

9    327 U.S. at 682–83).

10        Therefore, it is hereby **ORDERED** that this matter is **REMANDED** to the

11   Thurston County Superior Court.

12        Dated this 16th day of September, 2024.

BENJAMIN H. SETTLE
United States District Judge